## Black, et al v. Terry, et al.

(Decided February 25, 1914.)

### Appeal from Whitley Circuit Court.

1. Ejectment—Adverse Possession—Champerty—Evidence.—In an action of ejectment evidence examined and held to sustain a finding against defendants' plea of adverse possession and champerty.

2. Ejectment—Evidence—Prejudicial Error.—In an action of ejectment, admission of a contract of tenancy between plaintiffs' devisor and a tenant, which was not properly proven, held erroneous but not prejudicial.

3. Ejectment—Instructions.—Where plaintiffs proved title from the Commonwealth, and it was alleged and not denied that the land was a part of the patented boundary and was also embraced in certain deeds, and other mesne conveyances through which plaintiffs claimed contained the same description, it was not error to assume in the instructions that the plaintiffs were the legal title holders.

4. Ejectment—Adverse Possession—Instructions.—In an instruction on adverse possession, it is not error to require the adverse holder to claim "to a well-marked and defined boundary" instead of "by having it enclosed by fence or by cultivating it," since the former expression is broader than, and necessarily includes the latter, and has always received the approval of this court.

TYE & SILER and JAMES D. BLACK for appellants.

HENRY C. GILLIS and R. L. POPE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Alleging that they were the owners and entitled to the possession of a certain described tract of land located in Whitley County, Kentucky, which was a portion of the Joshua Tye land, and which was bought by James P. Haun on March 21, 1892, and conveyed to him by the Commissioner of the Whitley Circuit Court by deed

dated September 11, 1894, and that defendants, W. R. Black and others were wrongfully witholding possession thereof, plaintiffs, James E. Terry and others, brought this action in ejectment to recover the land in question. Defendants denied plaintiffs' title and pleaded title in themselves by adverse possession. They also interposed a plea of champerty. A jury trial resulted in a verdict and judgment in favor of plaintiffs. Defendants appeal.

The land in controversy was a part of the 200-acre patent issued to Joshua Tye in the year 1848. Joshua Tye died the owner of this patent, and left surviving him several children and grand-children. A suit was brought to settle his estate. The 200-acre tract was divided into three lots, and was sold and conveyed by the master commissioner. The west lot was sold to James Faulkner, and the adjoining lot was sold to James P. Haun. These lots were divided by a straight line. Each of the deeds calls for this line.

Plaintiff proved the following title:

(1) Deed by commissioner from Joshua Tye's heirs, dated January 25, 1893, to James P. Haun.

(2) Deed from James P. Haun and wife by the master commissioner, dated September 11, 1894, to Knaffle, Lock & Company.

(3) Deed from Knaffle, Lock & Company to R. D. Hill, dated September 4, 1902, and acknowledged by certain of the grantors on September 26, 1902, and by others of the grantors on June 18, 1903.

(4) Will of R. D. Hill to plaintiffs.

The land in controversy in this case is a tract of 8 3-4 acres, and is a part of the Haun lot, and adjoins the lot purchased by James Faulkner. There was some evidence to the effect that a division of Joshua Tye's land was made among his heirs, and that Henry Johnson, the son-in-law of Nelson Tye, built a fence around the tract in controversy and lived on and cultivated said tract. Afterwards, however, the tract was sold as a part of the Haun lot, and was purchased by Haun. Manifestly, whatever title Nelson Tye or Henry Johnson had to this lot passed by virtue of the conveyance made by the master commissioner in the action to which both Nelson Tye and Henry Johnson were parties. After the purchase of the adjoining lot by James Faulkner, defendants introduced certain witnesses, who claimed that the lot in controversy was not only fenced, but was in cultivation by James

Faulkner's tenants up until the year 1898. He then sold the lot which he had purchased to Joe Ed. Faulkner, but the deed which he executed to him did not cover the land in controversy. After getting this deed, Joe Ed. Faulkner took possession not only of the deeded land, but of the lot in controversy, and had it in cultivation up to the time this suit was brought.

Joe Ed. Faulkner sold to the defendants, but retained an interest in the land himself. His deed is in two paragraphs. By the first paragraph he sold his deeded boundary; by the second paragraph the 8 3-4 tract in controversy.

Defendants insist that the finding of the jury on the question of adverse possession and champerty is flagrantly against the evidence. In this connection it is insisted that while the witnesses were unable to state how long each particular tenant under James Faulkner and Joe Ed. Faulkner occupied the land, and the order in which the various tenants came, yet the evidence conclusively shows that the land in controversy was always enclosed and that there was never a time when it was not in the actual possession of parties holding as tenants under either James Faulkner or Joe Ed. Faulkner. While it is true that several witnesses testify as above set out, yet their positive statements were very much weakened by cross-examination. While it is shown that there was a fence surrounding the land, it was developed that this was an old worn out fence, and it was frequently down in places, and we think that the jury were justified in concluding from the statements of defendants' witnesses on cross-examination that there were frequent intervals when the continuity of possession was broken. At any rate, we cannot say that their finding upon the question of adverse possession and champerty was flagrantly against the evidence.

One of plaintiffs' witnesses introduced in evidence a written contract purporting to have been executed by one Drew Tye to R. D. Hill. This contract stated that R. D. Hill was the owner of the 60-acre tract (Haun tract), and that Tye had possession of one acre thereof, and that he would hold possession of the entire tract for Hill. It developed that the acre held by Drew Tye was not a part of the land in controversy. Defendants insist that the admission of this contract was prejudicial error, in view of the fact that the contract recited that R. D.

Hill was the owner of the 60-acre tract of land. As the execution of the contract was not properly proved, it should have been excluded, but as the acre of land which Tye had possession of is not a part of the land in controversy, and the land described in the contract is precisely the same as R. D. Hill's deeded boundary, we are unable to see how defendants were prejudiced by the statement in the contract that Drew Tye had possession of one acre of land, or the further recitation that Hill was the owner of his deeded boundary.

The court in substance told the jury to find for plaintiff unless they believed from the evidence that the defendants, Black and others, and those under whom they claimed, had for a period of 15 years or more next before the filing of the petition, held and claimed the lands in controversy openly, notoriously, adversely, continuously, uninterruptedly and visibly against plaintiffs and all persons whomsoever, to a well-marked and defined boundary, in which event they should find for the defendants. The court did not err in assuming in its instructions that plaintiffs were the legal title holders of the land in controversy. They proved title from the Commonwealth. The mesne conveyances through which they claim contain the same description as contained in the Haun deed, and the allegation that the tract in controversy was a part of the land conveyed to Haun and was also a part of the Joshua Tye land was not denied. There is no merit in the contention of the defendants that the court should have used the words ''by having it enclosed by fence or by cultivating it,'' instead of the words ''to a well-marked and defined boundary.'' The latter expression is broader than the first, and would include a boundary enclosed by a fence or in actual cultivation, and is the kind of an instruction that has always received the sanction and approval of this court.

Finding no error in the record prejudicial to the substantial rights of the appellants, it follows that the judgment should be affirmed, and it is so ordered.