CASE 73.—ACTION BY THE VIRGINIA IRON, COAL & COKE CO. AGAINST JAMES EVERSOLE, ETC., TO DE-TERMINE HIS RIGHT TO CERTAIN LAND AND THE MINERAL RIGHTS THEREIN.—April 19.

## Eversole v. Virginia Iron, Coal & Coke Co.

Appeal from Perry Circuit Court.

M. J. Moss, Circuit Judge.

Judgment    for    plaintiff.    Defendants    appeal. Affirmed.

1. Pleading—Motions—Election Between Causes of Action—Where a petition states a cause of action in different ways and seeks a diversity of relief, but the only substantial cause of action set up is that the plaintiff be adjudged the owner of the mineral right in certain land, a motion to require an election between causes of actions was properly denied.

2. Quieting Title—Possession by Plaintiff—Ky. Stats., 1903, section 11, authorizing suit by any person having both the legal title and possession of land to quiet title thereof, does not apply where a deed of the mineral right claimed by plaintiff was on record before the defendants acquired any title to the land, and by conveyance between them they attempted to convert the mineral right to their own use; and in such case it is not necessary for plaintiff to show that he is in possession of the land.

3. Vendor and Purchaser—Bona Fide Purchasers—Notice—Rec-ords—Where purchasers of land knew that the vendor was in

possession when he sold it, they are bound by constructive notice of a prior deed from him of the mineral rights in the land, recorded before they made their purchase, though he never held legal title to the land, so that his deed did not lie in the regular chain of title.

P. T. Wheeler and F. J. EVERSOLE for appellants.

1. Whether or not the trial court erred in overruling the appellant's motion to require plaintiff (appellee) to elect which cause of action it would prosecute, the one to cancel deed from James Eversole and wife to M. C. Eversole, of date the 6th day of July 1903; the one to compel James Eversole to convey said mineral and mineral rights to appellee, or the one to quiet its alleged title thereto.

2. Whether or not appellant's general and special demurrer to plaintiff's petition was properly overruled by the trial court.

3. Whether or not the deed to James Eversole of date November 26th, 1890, from William Stacy and wife, Thomas Milam and wife, and Absalom Eversole and wife was made for the good and valuable consideration paid to said grantors by James Eversole, and whether or not James Eversole had actual or constructive notice of the alleged deed from Tom Milam to T. P. Trigg, of date July 21st 1887, at or before the time appellant James Eversole bought, paid for and accepted the aforesaid deed to him for said land in fee.

4. Whether or not the mineral was excepted in the trade at the time James Eversole purchased and took deed to said land on November 26th 1890.

5. Was James Eversole an innocent purchaser of the land including the mineral rights in question and took a good title thereto.

6. If James Eversole took a valid title to said land and mineral in fee, is the deed he executed to the other appellant good, and does it pass title?

7. Can an innocent purchaser for value without notice who took a good title, by deed, convey a good and sufficient title to a third party, who had actual notice of other claims, that were invalid againts his grantor?

8. Is a purchaser required to look beyond the break in a grantor's chain of title, and is a deed out of the regular chain notice to a purchaser for value, although said deed be recorded?

9. Is plaintiff's action barred by the statute of limitations?

10. Has plaintiff shown by its pleading and by a preponderance of the evidence that it has a right to a recovery in this action?

Eversole v. Virginia Iron, Coal & Coke Co.

## AUTHORITIES CITED.

South v. White, etc., 41 S. W., 436; Campbell v. Campbell, 23 Ky. Law Rep., 869; Kentucky Statutes, sec. 11; Gately v. Weldon, 14 S. W., 680; Webb v. Adams, etc., 22 Ky. Lew Rep., 683; South, etc. v. Gatliff, etc., 5 S. W., 558; Smith v. Louis, 21 Ky. Law Rep., 1400; Cornelieson v. Foushee, etc., 40 S. W., 580; Kentucky Statutes, 496; Elliott v. Harris, etc., 5 Ky. Law Rep., 499; Saterfield v. Malone, vol. 1, L. R. A., 35; McLanahan v. Reedside, 9 Watts, 510; Maul v. Rider, 59 Pa., 167; Hethrngton v. Clark, 30 Pa., 393; Leiby v. Wolf, 10 Ohio, 83; Peterson v. McCauley, 25 S. W., 826; Kentucky Statutes, sec., 2515; Kentucky Statutes, sec., 2519; Dorsey etc., v. Phillips, 8 Ky. Law Rep., 405; Fritchler v. Koehler, 7 Ky. Law Rep., 34; Klinger v. Lemler, 135 Ind. 77; Van Syckel v. Bean, 19 S. W., 496; 2 Pom Eq., Jur., sec., 754; Varick v. Briggs, 6 Paige, 323; Hickman v. Hoffman, 38 S. W., 257.

BAILEY P. WOOTON and JESSE MORGAN for appellee.

GREENE & VANWINKLE of counsel.

1. It will be noted that James Eversole does not plead that he is an innocent purchaser, for value, without notice, nor does he prove that he was.

2. Had he pleaded this the burden would have been upon him to show that he was an innocent purchaser for value, without notice.

3. "Where one pleads he is a purchaser for value without notice, the onus probandi, as to notice, lies on the complainant." (3 Litt., page 371.)

4. And constructive notice is sufficient to those upon whom the burden is thus imposed, as they are required to take notice. (15 Ky. Law Rep., 139.)

5. We do not think James Eversole can now rely upon the plea of innocent purchaser. "Bona fide purchaser without notice must be relied upon by plea." (Hord v. Marshal, 5 Dana, 496; Pomeroy's Code Remedies, p. 679; Young v. Shefield, 34 S. W., 497.)

6. The plaintiff did not plead that defendant, James Eversole, had notice, for it was a matter of which he defendant, was better able to know than plaintiff; it was therefore incumbent upon defendant to specifically aver that he was a "bona fide purchaser for value, without notice." A. & E. Ency. of P. & P., vol. 14, pages 1070-3.

7. "Failure to aver notice when necessary, is fatal and grounds for reversal." A. & E. Ency of P. & P., vol. 14, p. 1069.)

8. "To entitle a defendant to protection as a bona fide purchaser without notice, he must deny such notice fully and particularly, even though such notice is not distinctly charged in the bill." (A. & E. Ency. of P. & P., vol. 14, p. 1073.)

OPINION OF THE COURT BY JOHN D. CARROLL, Commissioner—Affirming.

This controversy grows out of conflicting claims of appellant M. C. Eversole and appellee coal and coke company to the mineral rights and privileges in about 300 acres of land in Perry county. The facts are substantially as follows: In 1884 Thomas Milam purchased the tract of land from William Stacey, paying him therefor $400 and taking a bond for title. This bond was not put to record, but soon after the purchase Milam moved on the land and lived there until 1890, when he sold the tract to appellant James Eversole for $1,000. In 1887 Milam, being then in possession of the land, sold and conveyed the mineral rights therein to one Trigg, a remote vendor of appellee, and the deed to Trigg was put on record in the proper office in July, 1887. Milam, at the time he sold the land to James Eversole, had not obtained a deed for it, although the purchase money had been fully paid some years before, and Eversole, in order to perfect his title, obtained a deed from William Stacey, the vendor of Milam, as well as Milam, and Ab. Eversole, his brother, joined in the deed, because Stacey, previous to his sale to Milam, had sold and conveyed the land to Ab. Eversole, who, failing to pay the purchase price, afterward and before the sale to Milam surrendered the land to Stacey, but did not make a deed. In 1890 James Eversole had his deed recorded, and in 1903 he sold and conveyed to his son, the appellant M. C. Eversole, all the mineral rights

in said land. In 1904 the appellee company brought this suit against James Eversole and M. C. Eversole, alleging that it was the owner of the mineral rights in the land by virtue of the conveyance made to its vendor by Milam in 1887, and that appellant M. C. Eversole was asserting title to the mineral rights in the land under his deed from James Eversole, which it averred was made with the fraudulent purpose of cheating and depriving it of its ownership and title to said mineral right; that Eversole was setting up claim to the property which cast a cloud upon its title and impaired its enjoyment of its rights, as well as the vendible value of the property; and it prayed the court to adjudge it to be the owner of the mineral rights in the land and for cancellation of the deed from James Eversole to M. C. Eversole, and all proper relief.

After interposing various motions and demurrers to the pleadings, the appellants answered, setting up their title to the property and the right to its possession. Other pleadings were tendered that completed an issue between the litigants, and upon a hearing of the case the Circuit Court sustained the appellee and granted the relief prayed for. Appellants complain of error committed by the court in failing to require appellee to elect which one of the causes of action asserted by it it would prosecute, and in overruling the demurrer to the petition. In answer to the first contention we may say that, although appellee stated in different ways its cause of action and sought a diversity of relief, only one substantial cause of action was set up, and that was that it be adjudged the owner of the mineral right in this land. The other

allegations were merely incidental to this chief contention, and we do not think the court erred in overruling the motion to require it to elect.

It is urged that the demurrer should have been sustained because, as argued by counsel, this is an action to quiet title, and the petition should charge that appellee had the legal title and was in possession of the property. This argument rests on the assumption that appellee's action was for the purpose of quieting its title to the property, and therefore these allegations were necessary. It has been held that, to entitle a party to maintain an action to quiet his title, he must show possession in himself as well as title. Webb v. Adams, 58 S. W., 585, 22 Ky. Law Rep., 683; Gateley v. Wilder, 14 S. W.; 680, 12 Ky. Law Rep., 622; Cornelison v. Fourshee, 40 S. W., 680, 19 Ky. Law Rep., 417. But in our opinion the principle of law announced in these cases is not applicable to the question here involved, which falls within the rule laid down in Herr v. Martin, 90 Ky. 377, 12 Ky. Law Rep., 359, 14 S. W., 356, where it is said that section 11 of the Kentucky Statutes of 1903, invoked by appellants in this case, "does not relate to an effort to deprive one of his title by converting it to the other party's use. Such effort is not clouding the other person's title by asserting a superior hostile title to the property, but is a deprivation of the title by converting the same to the use of the person seizing it. It is the wrongful seizing of his title that is the foundation of the action. Asserting a paramount adverse title to the land is a cloud upon the title of the other party, but to seize his title is to deprive him of his right to his estate. In the first-named case the person must have the

legal title and the possession in order to maintain his action to remove the cloud from his title. In the latter case he can maintain his action, although not in the possession, as readily as if the injury were done to the corpus of his estate.'' Packard v. Beaver Valley Land & Mining Co., 96 Ky., 249, 16 Ky. Law Rep., 451, 28 S. W., 779; Kant v. Hall, 23 S. W., 954, 15 Ky. Law Rep., 511. Here, as in that case, the appellants are seeking to deprive the appellee of its title to this property by converting the same to their use, and the relief sought by appellee is the cancellation of the conveyance under which appellants claim title and that it be adjudged the owner There-fore the demurrer to the petition was properly overruled, as it was not necessary to maintain this action that appellee should be in possession of the property.

Appellants also insist that James Eversole, when he obtained the conveyance from Stacey and others, did not have actual or constructive notice of the previous sale of the mineral rights therein by Milam to Trigg. In suport of this proposition our attention is called to the fact disclosed by the evidence that James Eversole, when he purchased the land, had the title examined by a lawyer, who pronounced it good; the attorney overlooking or failing to discover the deed previously made by Milam to Trigg. The evidence does not establish that James Eversole, at the time he purchased, had actual notice of the convey-ance by Milam to Trigg; and appellants insist that, as the deed from Milam to Trigg did not lie in the regular line or chain of title to be examined in tracing the title of the land, James Eversole was not affected with constructive notice of this deed. They

argue that Milam. had no title of record; that the legal title to the land was in his vendor, Stacey, or Ab. Eversole, to whom Stacey had sold; and that, as there was no record of any deed to Milam, Eversole was not charged with notice of any conveyance made by Milam. As a distinct legal proposition, there is considerable authority in support of this proposition. In Dembitz on Land Titles, a valuable work prepared after extensive and accurate research and laborious industry by a distinguished Kentucky lawyer, the rule is thus stated by the learned author: ."But the constructive notice of the deed arising from its registry operates only on those against whom the statute makes it notice. If it be not a deed from the same grantor under whom the purchaser takes title, he need not look at it. Hence, when the record leaves title in A., the appearance of a deed from B. to C. does not set purchasers on inquiry to find the unrecorded transfer from A. to B. And it would be the same if there were a deed from B. back to A. reserving the vendor's lien." The doctrine of the text is supported by Corbin v. Sullivan, 47 Ind., 356; Peterson v. McCauley (Tex. Civ. App.), 25 S. W., 826; Satterfield v. Malone (C. C.), 35 Fed., 445; 1 L. R. A., 35; Woods v. Farmere, 7 Watts (Pa.), 382; 32 Am. Dec., 772; Leiby's Exrs. v. Wolf, 10 Ohio, 83, and many other cases. But this principle of law, new, as it is in the jurisprudence of this State, however correct, has no applicability to this case, because James Eversole purchased the land from Milam, who was in possession, with the equitable title, and had the right to convey, and paid Milam the purchase price, with the understanding that Stacey and Ab. Eversole would make him a deed, and at the time

of his purchase Milam was living on the land. These facts were sufficient to put Eversole upon notice that in investigating the title he must look to any conveyance that may have been made by Milam. If he had bought the property from another person than Milam, and without any knowledge of Milam's ownership or possession of the premises, a different question would be presented. As said in the work on Land Titles before quoted: "Generally, whenever the proposed purchaser learns anything which renders the vendor's title suspicious, he is thereby put on inquiry, and must pursue this inquiry at his peril until he finds the unrecorded grant or incumbrance, or until he has exhausted all means of finding it." The deed from Milam to Trigg had been recorded in the manner provided by the statute, and Eversole was bound to take notice of it, and he cannot escape the responsibility for his failure to find it by sheltering himself under the technical rule that it was outside the regular chain of title that he was investigating.

It is not denied that the appellant M. C. Eversole, before his purchase of the mineral right from his father, had notice that appellee was claiming the mineral right under its purchase from Milam; but appellants insists that, although M. C. Eversole did have notice of appellee's chain of title to the land, he is not affected by it, because his immediate grantor, James Eversole, acquired the title without notice of appellee's claim; and in support of this proposition they cite numerous authorities holding that a purchaser without notice may sell and convey a good title to one having notice—the rule as stated in Pomeroy's Equity being that, "if a second purchaser

with notice acquires title from the first purchaser who was without notice and bona fide, he succeeds to all the rights of his immediate grantor.'' Lindsey's Heirs v. Rankin, 4 Bibb, 482; Moore v. Dodd, 1 A. K. Marsh., 140. But, as we have seen, the immediate vendor of M. C. Eversole did have notice of appellee's claim before he purchased; therefore appellants cannot invoke this doctrine in their behalf.

Having noticed all the material questions raised by appellants, we do not think that any good purpose would be subserved in exending this opinion further.

The judgment of the lower court is affirmed.