## Hyde Park Supply Company v. Peck-Williamson Heating & Ventilating Company.

## Call Brothers Hardware Company, et al. v. Stump, et al.

(Decided June 22, 1917.)

### Appeals from Pike Circuit Court.

1. Deeds—Constructive Notice—Rule as to.—The general rule of constructive notice derived from deeds is, that it extends to every instrument forming an essential link in the direct chain of title through which the purchaser holds; that is, to the ultimate source of his title, and to every necessary deed through which the title must be directly traced, and which is necessary to its establishment.

2. Deeds—Constructive Notice—Rule as to.—The general rule imputing constructive notice from title papers does not extend to or embrace recitals in a deed or other title paper of matter which is wholly foreign to the nature and objects of the instrument, or to statements contained in an instrument which is purely collateral and deals with another subject matter, which is not connected with the direct series of title deeds by reference, although such collateral instrument may have been executed between the same parties.

3. Deeds—Notice.—Purchasers and persons dealing with the owner of property are bound by the recitals of the deed which conveyed the title to the vendor, although it was unrecorded and they had no actual notice of the recitals.

4. Religious Societies—Conveyance of Property by.—The general powers of church officers are not materially different from those exercised by the managing officers and directors of private corporations and associations. In the absence of a charter of incorporation, the individuals composing the congregation are, as

natural persons, competent to convey their property; but, if there are trustees in whom it is vested, they, with the consent of the individuals constituting the congregation, may convey, and in some jurisdictions, instead of such assent of the congregation or religious body, it is made sufficient for the validity of any conveyance if the sale be sanctioned by the court.

5.   Mechanics' Liens—Attachment.—A mechanic's lien creditor can not secure to himself a lien superior to the lien of similar lien creditors, by suing and taking out an attachment upon the property which is subject to the common lien of all the creditors.

6.   Mechanics' Liens—Statute.—Chapter 79 of the Kentucky Statutes, relating to liens of mechanics and materialmen, provides a code of procedure by which the liens of mechanics and materialmen may be preserved and enforced; and, in order to preserve and enforce the lien therein provided for, the statute must be followed.

AUXIER, HARMON & FRANCIS and J. S. CLINE for appellants.

A. F. CHILDERS, O. A. STUMP and E. D. STEPHENSON for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming in part and reversing in part.

In this controversy between the creditors of the First Methodist Church, of Pikeville, the question to be decided relates solely to the priority of the liens of the respective creditors. The trustees of the church were A. O. Stump, W. K. Elliott, Rissie Pherigo, Alpha Polley, and J. K. Thornsbury.

In the summer of 1911, the congregation concluded to build a new church upon a new site, which it bought from A. J. Kirk. Kirk and wife conveyed the property to the church trustees on August 22, 1911, retaining a lien for $650.00, unpaid purchase money. This deed was delivered, but was never recorded. The lien note was given to A. O. Stump and W. K. Elliott, who furnished the purchase money represented by the note. The trustees proceeded with the erection of the church by employing such mechanics and builders as were necessary in that work.

W. H. Brown erected the main building; and, upon his completion of his portion of the structure in the summer of 1912, he claimed there was a balance of $1,872.00 due him. After repeated efforts to collect his money, Brown agreed to take $1,500.00 in settlement of the balance due him, provided the trustees would secure

it by a mortgage upon the church property. The trustees accepted the proposition; gave their note dated September 7, 1912, to Brown, for $1,500.00, and executed a mortgage upon the church property to secure its payment. Brown assigned the note to the Evanston Cement Block Company, and it, in turn, assigned the note to the Hyde Park Supply Company.

In building the church, the Peck-Williamson Heating & Ventilating Company, the Kenova Lumber & Supply Company, the Call Brothers Hardware Company, the Builders Supply Company, and certain individual contractors, performed labor and furnished materials.

On May 26, 1913, the Hyde Park Supply Company filed its action to enforce its mortgage lien upon the church property. On October 28 of the same year the Peck-Williamson Heating & Ventilating Company filed its action to enforce its materialman's lien under section 2468 of the Kentucky Statutes; and, on March 9, 1914, it obtained a judgment for its debt amounting to $625.00, and an enforcement of its lien. On May 7, 1914, attachment suits were filed by the Kenova Lumber & Supply Company and the Call Brothers Hardware Company; and, on May 20 of that year those two corporations obtained judgments for their respective debts, which also sustained their attachments and awarded them liens upon the church property.

In the meantime, it having been discovered that the deed of August 22, 1911, from Kirk to the trustees had not been recorded, but had been lost, Kirk executed a new deed to the trustees on July 1, 1913, reciting that all of the purchase money had been paid.

On May 27, 1914, shortly after the Kenova Lumber & Supply Company and the Call Brothers Hardware Company had obtained their judgments, as above recited, Stump and Elliott intervened in the action of the Peck-Williamson Heating & Ventilating Company against the church trustees, attacking the several judgments that had theretofore been rendered against the church trustees, upon the ground that the other holders of liens against the church property had not been made defendants to those actions.

The several actions were finally consolidated, and the consolidated action was referred to F. T. Hatcher, master commissioner, to report upon the several liens and their respective priorities. Hatcher reported on

November 20, 1915, giving Everett Gullett, a laborer, a first lien for $61.75; the Peck-Williamson Heating & Ventilating Company a second lien for $733.00; a third lien (with equal priority as between themselves) to the Call Brothers Hardware Company and the Kenova Lumber & Supply Company for $1,007.56 and $1,075.19, respectively.

While the master's report allowed the claim of the Hyde Park Supply Company for $1,500.00; the claim of Stump and Elliott for $669.86; the claim of Thornsbury and others for $1,000.00 furnished in the building of the church; the claim of the Builders Supply Company for $510.09; the claim of the Ward-Brock Sash & Door Company for $431.25, and that of L. L. Stone for $138.93, he denied the claim of these creditors to a lien, thus making them general creditors, only. The commissioner allowed the liens of the judgment creditors because the judgments in those cases, in terms, awarded liens; and, he rejected the claim of the Hyde Park Supply Company for a lien for the $1,500.00 secured by the mortgage of September 7, 1912, because the trustees of the church had no authority to execute the mortgage.

Upon exceptions to the report by the various creditors, the court revised the master's findings, and entered a judgment giving: (1) Everett Gullett a first lien; (2) Stump and Elliott a second lien; (3) allowing the debts of the Peck-Williamson Heating & Ventilating Company, the Call Brothers Hardware Company, the Kenova Lumber & Supply Company, the Hyde Park Supply Company, and the other creditors heretofore named, but rejecting their several claims for liens; and, (4) directing a sale of the property to pay the debts in the order above named.

From that judgment the Call Brothers Hardware Company, the Builders Supply Company, the Peck-Williamson Heating & Ventilating Company, and the Kenova Lumber & Supply Company jointly prosecute an appeal, and the Hyde Park Supply Company prosecutes a separate appeal.

The claim of Everett Gullett for a first lien for labor performed is small, and is not controverted in the briefs.

1. Proceeding in the order outlined by the judgment, we will first dispose of the claim of Stump and Elliott to a second lien.

The lien retained in the unrecorded deed is undoubtedly valid as between the parties; but the chancellor went further and enforced it as against strangers.

It is not contended that any of these creditors had actual notice of the existence of the lien retained in the lost deed; and, as the new deed of July 1, 1913, reserved no lien to Stump and Elliott, the first actual notice that the creditors had of this purchase money lien was given by Stump and Elliott's intervening petition filed May 27, 1914, after these other debts had been contracted and after the building practically had been completed. Notwithstanding this state of the record, Stump and Elliott contend they were entitled to priority over the contractors who had built the church; and, the circuit court so held.

Stump and Elliott would sustain their priority upon the theory that notice was imputed to the several contractors by the mortgage of September 7, 1912, to Brown, which contained this clause: "This said mortgage is given subject to the purchase money on the lot about $600.00 and Int. in Pikeville National Bank, also $1,000.00 note endorsed in bank by W. H. Brown and others."

The general rule of constructive notice derived from deeds is that it extends to every instrument forming an essential link in the direct chain of title through which the purchaser holds; that is to the ultimate source of his title, and to every necessary deed through which the title must be directly traced, and which is necessary to its establishment. Johnston v. Gwathney, 4 Litt 317, 14 Am. Dec. 135; Honore v. Bakewell, 6 B. M. 67, 43 Am. Dec. 147; Thornton v. Knox, 6 B. M. 74; Lucy v. Hopkins, 11 Ky. L. R. 908; Eversole v. Virginia I. C. & C. Co., 122 Ky. 655.

In 2 Pom. Eq. Jur., 2nd ed., sec. 628, the rule is stated as follows:

"Not only is a purchaser thus charged with a constructive notice of everything material in the deeds which form the direct chain through which his title is deduced, but if any of these conveyances should contain a recital of or reference to another deed otherwise collateral, and not a part of the direct series, he would by means of such recital or reference have notice of this collateral instrument, of all its contents, and of all the facts indicated by it which might be ascertained through

an inquiry prosecuted with reasonable diligence. Finally, the notice extends to all deeds and other instruments properly falling within the two preceding rules, whether they are recorded or unrecorded. In other words, a purchaser is charged with notice of any deed forming a part of his direct chain of title, and of every collateral instrument recited or referred to, as well when it is unrecorded as when it is recorded."

But this rule imputing constructive notice from title papers does not embrace all recitations in deeds forming a part of the direct chain of title, or recitals in instruments not in the direct chain of title. The limitation upon the general rule is stated in 2 Pomeroy's Equity Jur., section 629, as follows:

"To the general rule defining constructive notice from title papers, and to the subordinate rules contained in the preceding paragraph, there are one or two necessary limitations. In the first place, a purchaser is not charged with constructive notice of absolutely every matter or fact stated in the instruments forming his direct chain of title, or in a collateral instrument connected with the direct series by reference or recital. The rules do not extend to, and he is not constructively bound by, a recital in any deed or other title papers of matter which is wholly foreign to the nature and objects of the instrument. In other words, he has no constructive notice of any matter contained in a recital which does not affect his own interest in the property held under or through the conveyance, or from which other persons do not derive any rights in such property; he is not charged with notice of any fact wholly collateral and foreign to the objects and effects of the instrument as a conveyance of an estate or interest to himself. In the second place, the rules do not extend to any recital or statement contained in an instrument which is purely collateral, and deals with another subject-matter, and which is not connected with the direct series of title deeds by reference, although such collateral instrument may have been executed between the same parties. The purchaser is not charged with constructive notice of such a recital or statement."

As this recital in the mortgage was merely collateral, and not in the direct chain of title, it did not impute notice to strangers to that paper. The recorded mortgage, if valid, carried notice to all purchasers of the

debt secured by the mortgage; its collateral recitals did not, however, impute notice to appellants.

But, the unrecorded deed of August 22, 1911, retained a lien to Stump and Elliott; and, that deed being in the direct chain of title, the appellants were bound by. its contents, although it was unrecorded. It was the only title paper under which the church held title at the time appellants did the work sued for. It conveyed the title to the church trustees; and, purchasers and persons dealing with the church were bound to take notice of its title. They can only claim under such title as the church had. If the church had had no title, the appellants would have acquired no interest against the church lot by reason of their work. If, on the other hand, the church had a good title, or an. encumbered title, their rights would be correspondingly affected.

It follows, therefore, that Stump and Elliott's claim to a prior lien was properly sustained.

2. In rejecting the claim of the Hyde Park Supply Company for a lien under the mortgage given by the trustees of the church, the circuit court was not in error. The title to the property was in "J. K. Thornsbury, A. O. Stump, Rissie Pherigo and W. K. Elliott, trustees of the First Methodist Church, of Pikeville, Ky." They were given no powers of sale, and held the property as trustees for the congregation.

In 34 Cyc. 1134, the rule concerning the powers, duties and liabilities of trustees of churches, is stated as follows:

"The general powers of church officers are not materially different from those exercised by the managing officers and directors of private corporations and associations. They are mere agents or legal instruments to execute the will of the corporators, intrusted with the care and management of all the temporalities of the parish or society over which they exercise jurisdiction, with powers co-extensive with that of the corporation, and with the territorial jurisdiction conferred upon them by the canons of the church made in conformity to the laws of the state, and they are responsible to the congregation for the proper performance of their duties."

And, concerning the power of trustees to sell or mortgage church property, the same work, on page 1160, says:

"In the absence of a charter of incorporation, the individuals composing the congregation are, as natural persons, competent to convey their property; or, if there are trustees in whom it is vested, they, with the consent of the individuals constituting the congregation, may convey, and in some jurisdictions, instead of such assent of the congregation or religious body, it is made sufficient for the validity of any conveyance if the sale be sanctioned by the court."

And the rule is well settled that other creditors whose rights or interests are injuriously affected by an invalid mortgage may set up its invalidity; it is not a defense that it is personal only to the mortgagor. 27 Cyc. 1131.

The trustees were given no authority by the congregation to either mortgage or sell its property. There is no record of any meeting upon the subject; the most that is claimed in this respect is, that at the inauguration of the movement to build a new church, the congregation directed the trustees to proceed with the building of the church and do whatever was necessary in the premises. Giving this delegation of authority its broadest meaning, it cannot be said that it even pretended to confer the extraordinary power here exercised.

It is contended, however, that under the discipline of the Methodist church, the trustees had the power to make the mortgage in question. The discipline is not, however, in the record, and we cannot assume that the powers of the trustees were as broad as those claimed by counsel. In the absence of any showing of power either in the deed or in the church discipline, we are controlled by the provisions of the statute providing for the sale of property under a judgment of the circuit court. Ky. Sts., sec. 324.

It would be a dangerous doctrine that would recognize the right of trustees of church property to execute a mortgage upon the property of the congregation merely because they chose to do so, and in the absence of some express authority actually granted.

3. In behalf of the claims of the judgment creditors, the Peck-Williamson Heating & Ventilating Company, the Kenova Lumber & Supply Company, and the Call Brothers Hardware Company, it is contended that these judgments constituted liens superior to the other claims for supplies and labor, because these claims

were reduced to judgments, which, in one case, gave a lien under section 2468 of the Kentucky Statutes, and in the other two instances liens were adjudged by virtue of the uncontroverted attachments that were levied in those cases; and that the circuit court was without power to set aside or subordinate the liens thereby acquired at a subsequent term of the court.

We do not so understand the ruling of the circuit court. The final judgment did not attempt to nullify these former judgments; it merely adjusted the liens under the statute, after all the lienholders had been brought before the court, which the statute requires must be done.

The action of the Peck-Williamson Heating & Ventilating Company was brought under the statute giving a lien to mechanics and materialmen, and alleged that the notice required by section 2468 of the Kentucky Statutes had been filed in the office of the county court clerk within the time prescribed by the statute. The petitions, however, of the Kenova Lumber & Supply Company and the Call Brothers Hardware Company failed to show that either of those creditors had preserved its lien by filing the statutory notice. They rested their claims for liens under the attachment proceedings, that were therein taken. In this respect they appear merely as general creditors who have sued and thereby obtained judgments for their respective claims. But, chapter 79 of the Kentucky Statutes, relating to liens of mechanics and materialmen, provides a code of procedure by which the liens of mechanics and materialmen may be preserved and enforced. It not only specifies who may have a lien, but how it may be preserved and enforced, not only for the benefit of some one mechanic or materialman, but for all mechanics and materialmen who have furnished labor or supplies in the improvement of the property.

Under section 2468, *supra*, the lien will be dissolved unless the claimant files his notice thereof in the office of the clerk of the county court within six months after he ceased to labor or furnish materials; and, by section 2470, liens will stand dissolved unless an action is brought to enforce them within twelve months from the day of filing the account in the clerk's office as required by section 2468, *supra*. Furthermore, section 2471 requires all lienholders to be made parties, either

plaintiffs or defendants; and, after the expiration of ten days from the filing of the petition, it becomes the clerk's duty to draw up an order referring the case to the master commissioner of the court, and deliver to him the pleadings and papers in the suit. Section 2472 makes it the duty of the commissioner at once, to ascertain the names of all persons claiming liens against the property, whether arising under the provisions of chapter 79, or otherwise; and by section 2473, he is further directed to call witnesses, audit the accounts of claimants, and make up his report showing the amount due to each claimant, and the nature and character of the respective liens. This procedure is careful to protect all lienholders equally; it contemplates equality of liens, not superiority.

But the suits in which these judgments were obtained wholly ignored the statute; they did not pretend to make the other lienholders parties, or make any provision for their protection, as provided by the statute; and, in requiring the consolidation of all the suits and the bringing in of all the lien claimants, the circuit court only followed the express provisions of the statute. While it is true their judgments are conclusive as to amounts due, and, in that respect are not to be set aside at a subsequent term of the court, it by no means follows that those judgments are conclusive as to the priority of the liens therein declared. In fact, the judgments do not pretend to give these creditors any priority of liens; they merely adjudge that the plaintiffs have liens upon the church property.

Moreover, the suits by the Kenova Lumber & Supply Company and the Call Brothers Hardware Company did not set up causes of action under chapter 79 of the Kentucky Statutes relating to liens of mechanics and materialmen, because their petitions failed to show that they had preserved their liens by filing the notice required by section 2468, *supra;* and, as they failed to show that fact, they were suing merely as general creditors and were attempting to secure liens by attachment proceedings. But this could not be done to the prejudice of those who had preserved their liens under the statute.

The Peck-Williamson Heating & Ventilating Company was, however, the only appellant that preserved its lien; but, its lien, as above pointed out, was inferior to

the purchase money lien of Stump and Elliott. And, as Stump and Elliott have taken no appeal from that portion of the judgment which gives Everett Gullett a lien superior to all others, the propriety of that portion of the judgment cannot be questioned.

Upon the appeals of the Call Brothers Hardware Company, the Builders Supply Company, The Kenova Lumber & Supply Company, and the Hyde Park Supply Company, the judgment is affirmed; upon the appeal of the Peck-Williamson Heating & Ventilating Company, the judgment is reversed with instructions to the circuit court to enter a judgment giving that company a third lien.