## Farnsworth, et al. v. Barret, et al.

(Decided February 2, 1912.)

### Appeal from Henderson Circuit Court.

1. Judgment—Effect to Be Given To.—In the case of a judgment rendered by a domestic court of general or superior jurisdiction, which is attacked in a collateral proceeding, there is a presumption, which can only be overcome by positive proof, that the court had jurisdiction, both of the person and the subject-matter, and proceeded in the due exercise of that jurisdiction.

2. Judgment—Presumptions In Favor of.—In the support of the judgment of a court of general jurisdiction, as against a collateral attack, it will be presumed, unless it is expressly shown to be contrary, that legal and proper process was issued in the action, and that it was duly and regularly served upon the defendant.

3. Limitation Against Mining Rights.—Possession of the surface of land does not give possession of the mining rights which had been theretofore sold; on the contrary, such possession presumes that the holder of the surface was only a trustee for the benefit of the owner of the mining rights, and limitation in such a case will not run in favor of the owner of the surface against the owner of the mining rights.

DORSEY & STANLEY for appellants.

YEAMAN & YEAMAN and MONTGOMERY MERRITT for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

This is a controversy concerning the coal and mining rights under 40 acres of land near Henderson. The appellant, Nancy Nicholson, is the owner of the land, and claims to be the owner of the coal and mining rights thereunder, while the appellees also claim to own the coal and mining rights. The controversy arises in this way: In 1906, the appellees, James R. Barret and others, sold the coal and mining rights in controversy to the Keystone Mining & Manufacturing Company, and retained a vendor's lien for the unpaid purchase money; and the company having failed to pay the purchase money, appellees brought this suit on December 26, 1907, to enforce their lien. In its answer the company alleged that the appellants, Nancy J. Nicholson, J. L. Nicholson and R. P. Farnsworth, were claiming to be the owners of said coal and mining rights, and it

made its answer a cross-petition against them. Appellants answered, and set up their claim of ownership to the coal and mining rights under the 40 acres in controversy. Appellants and appellees alike claim title through David Banks, as their common grantor.

In 1854, D. R. Burbank, A. B. Barret, John G. Holloway, David Banks and others organized the Henderson Coal Company, and on July 28, 1854, Banks conveyed to the Henderson Coal Company the coal and mining rights under the land in controversy as his contribution to the capital stock of the company. After sinking a shaft and incurring quite a large indebtedness, chiefly to Burbank, Barret and Holloway, the Henderson Coal Company was put into liquidation, and in 1857 Burbank, Barret and Holloway brought suit in the Henderson Circuit Court to enforce the collection of the company's indebtedness to them. This suit was styled David R. Burbank and others v. F. Cunningham and others. To this suit Banks and the other stockholders were made defendants. In organizing the corporation, Burbank, Barret and Holloway had furnished most of the capital, while Banks and the other incorporators put in the mineral rights under their lands, for which they received stock in the corporation. Burbank, Barret and Holloway sought to make the stockholders personally contribute to the payment of this indebtedness in proportion to the amount of stock severally subscribed for by them. Banks and the other defendants filed their answer, in which they successfully claimed that they had conveyed to the company the coal and mining privileges under their lands in satisfaction and in discharge of their liability as subscribers of stock; that said mining privileges had been accepted by the company in satisfaction of their subscription, and that they were not therefore personally liable. In 1858, a judgment was entered, fixing the claims of the plaintiffs against the company, which also provided that the defendant stockholders should have the privilege of paying their pro rata of the indebtedness of said company, and thereby prevent the sale of the coal and mining privileges that they had conveyed to the company; but in case the indebtedness should not be paid, the mining rights owned by the company should be sold for that purpose. This judgment was not executed; on the contrary, the case having dragged along on the docket

without any attempt to enforce the judgment, it was, in September, 1867, on motion of plaintiffs' attorneys, stricken from the docket. It so remained until March, 1869, when it was, upon the motion of Holloway, one of the plaintiffs, and without notice to any of the defendants, reinstated upon the docket. In the meantime, Barret, Burbank and Holloway had died, and the action proceeded in the name of their personal representatives; and by an order entered in March, 1872, the judgment of 1858 was revived in the name of the executors of Burbank, Barret and Holloway, and a sale of the company's coal rights was made thereunder, the plaintiffs becoming the purchasers. At the March term, 1873, Lambert and other defendants moved to set aside the sale because the judgment of 1858, under which the sale was made, had been revived without notice to any of the defendants after the case had been stricken from the docket. The Circuit Court sustained that motion, and set aside the sale; and upon an appeal to the Court of Appeals by the executors of Burbank, Barret and Holloway, the judgment of the Circuit Court was affirmed in 1873.

The Court of Appeals having declared that the revivor proceedings in 1872 were null and void for want of notice to the defendants of the reinstatement of the action in March, 1869, the personal representatives of Burbank, Barret and Holloway abandoned the original action, and subsequently in 1873 filed a new action in the Henderson Circuit Court against Sarah Cunningham, the widow and heir of F. Cunningham, who had died in the meantime, and against the other defendants, seeking to revive the original judgment of 1858. That suit is known as Barret's Admr., etc., v. Sarah Cunningham, etc., to distinguish it from the original suit of A. B. Barret, etc., v. F. Cunningham, etc. To this second action all of the original subscribers to the capital stock of the Henderson Coal Company or their representatives, were made parties, and a judgment of revivor was entered in 1876, directing the sale of the mining privileges as originally ordered under the judgment of 1858. From this judgment all of the defendants, except Soper, prayed an appeal to the Court of Appeals, but none of them prosecuted the appeal. In pursuance of said judgment of 1876, the coal and mining privileges under the Banks land were sold and

bought by the plaintiffs in the action, the personal representatives of Burbank, Barret and Holloway, on December 16, 1878. They subsequently sold to the Keystone Mining & Manufacturing Company, the present owner, and defendant in this action.

In the meantime, in 1860, David Banks had conveyed the land which contained the coal and mining rights he had theretofore conveyed to the Henderson Coal Company in 1854, to John G. Holloway, in trust for the benefit of his creditors; and in the same year Holloway, the trustee, with Banks and his wife joining in the deed, conveyed the land to W. G. Taylor; and by mesne conveyances the land came into the hands of R. P. Farnsworth in 1907, who conveyed it to the appellant, Nancy Nicholson, in the same year. It will thus be seen that appellants have a complete chain of title to the land from David Banks, while appellees have a like chain to the coal and mining privileges under the land. Appellants claim that they acquired the coal and mining privileges through their remote grantor, Taylor, when he bought the land from Banks in 1860.

Upon the hearing of the case the chancellor held that the appellees were the owners of the coal and mining privileges in and under the Banks tract of land, and dismissed the appellants' cross-petition; and from that judgment they have prosecuted this appeal.

The controversy is to be settled by determining what estate W. G. Taylor took when he bought the land in 1860, and the effect of the judgment of 1876 upon that interest. The chief defense of appellants is that W. G. Taylor, who bought the land from Banks and his assignee in 1860, was not made a party to the second revivor suit brought against the stockholders in 1873, and that he and his vendees are not therefore bound by the judgment and sale in that action, through which the appellees acquired title to the coal and mining privileges.

In the caption of the petition in the rivivor suit of 1873, either the name of W. G. Taylor or L. G. Taylor appears as a defendant. Evidently the first initial was written either "L" or "W," and subsequently changed upon the face of the paper, so that it is impossible to now say whether it is W. G. Taylor or L. G. Taylor. In the body of the petition, however, it is alleged that

"The defendant, W. G. Taylor, purchased and owns part of the lands, including the mining privileges conveyed by D. Banks to said company;" and further, that "L. G. Taylor has departed this life, and Ed. Atkinson owns the land, including the mining privileges, conveyed by him."

The same confusion appears on the face of the summons, where the name of L. G. Taylor was changed after it has been originally written; but the sheriff's return shows the summons was served upon L. G. Taylor. The judgment is regular upon its face, and directs the sale of the mining rights which David Banks had sold to the Henderson Coal Company in 1854. The petition showed that L. G. Taylor was dead at the time it was filed in 1873; and it further appears that W. G. Taylor did not die until 1882. It therefore is reasonable to presume that the proceedings in said suit were against W. G. Taylor, who was then alive, rather than against L. G. Taylor, who was dead; and especially is this true since the petition specifically alleged that W. G. Taylor, who was then alive, had purchased and owned the Banks land. The judgment being regular and having decreed a sale of the mining privileges under this land, it is not to be lightly set aside in a collateral proceeding.

In 23 Cyc., 1078, it is said:

"In the case of a judgment rendered by a domestic court of general or superior jurisdiction, which is attacked in a collateral proceeding, there is a presumption, which can only be overcome by positive proof, that it had jurisdiction, both of the persons and the subject matter, and proceeded in the due exercise of that jurisdiction.

In the support of the judgment of a court of general jurisdiction, as against a collateral attack, it will be presumed, unless expressly contrary to what is shown by the record, that legal and proper process was issued in the action and that it was duly and regularly served upon defendant."

Jones v. Edwards, 78 Ky., 6; Feltner v. Huff, 118 S. W., 927; Dennis v. Alves, 132 Ky., 352, and Bamberger v. Green, 146 Ky., 259, are to the same effect.

We are of opinion therefore, that the judgment of 1876 was binding upon W. G. Taylor, and the sale

thereunder carried whatever interest he had in the coal and mining privileges.

It is further claimed that the deed from Banks to the Coal Company in 1854 was void and conveyed no interest, (1) because of an indefiniteness of description; (2) for want of title in Banks at the time it was made, and (3) for want of a consideration to sustain it. But that question can not now be raised, since Taylor's title to the mining rights was adjudged inferior to that of the coal company in the judgment of 1876. That is not now an open question to be retried between their successors in title.

Appellants and appellees rely upon the thirty year statute of limitation in support of their respective titles, the appellants claiming that they have been in adverse possession of the land for more than thirty years, while the appellees claim that they have been in adverse possession of the mineral and mining rights for more than thirty years. We are of opinion, however, that this controversy is concluded by the principle announced in 2366a of the Kentucky Statutes (Act of 1906), which is as follows:

"Wherever the mineral or other interests in or rights appurtenant to land in this Commonwealth have heretofore passed, or shall hereafter pass, in any way, from a claimant in possession of the surface of said land, the continuity of the possession of such mineral, interests and rights shall not be deemed thereby to have been, or to be, broken; but the possession of the surface by the original claimant thereof, from whom such mineral, interests or rights passed, or by those claiming through or under him, or by virtue of a judgment against him in an action to which the holder of said mineral, interests or rights is not a party, shall be deemed to have been, and hereafter to be, the possession of such mineral, interests and rights in said land for the benefit of said person, his heirs and assigns, to whom said mineral, interests or rights have or shall have passed as aforesaid."

And, since the statute is merely declaratory of the common law as announced in most of the States, which holds that possession of the surface does not give possession of the mining rights which had been sold, but, on the contrary, presumes that the holder of the surface was only a trustee, and held possession for the

benefit of the owner of the mineral, the same principle controlled prior to the passage of the Act of 1906, supra. McBurney v. Glenmary Coal & Coke Company (Tenn.), 118 S. W., 694, and Delaware & Hudson River Co. v. Hughes, 183 Pa., 638. Neither Taylor nor Farnsworth nor their predecessors in title could claim to own the mineral rights under this land by adverse possession although they actually held the land; and Mrs. Nicholson, not having possession of the minerals under the land, but only of the surface, could not have maintained a suit to quiet her alleged title to the mineral rights. Combs v. V. I. Coal & Coke Company, 32 Ky. L. R., 601, 106 S. W., 815; Price v. Big Sandy Company, 32 Ky., 971, 107 S. W., 725. On the contrary, the Keystone Mining & Manufacturing Company could have maintained a suit against Mrs. Nicholson, the owner of the surface, to quiet its title to the minerals without being in possession of the land. Eversole v. V. I. Coal & Coke Company, 122 Ky., 649. Under this state of case limitation did not run against either owner.

In holding that Taylor and his vendees were bound by the judgment of 1876 through which appellees acquired title to the mineral rights, and in entering the judgment complained of, the chancellor did not err.

The judgment of the Circuit Court is affirmed.