### Combs v. Adams et al.

April 19, 1940.

S. M. Ward, Judge.

C. A. Noble for appellant.

W. W. Reeves and John B. Eversole for appellees.

Opinion of the Court by Judge Tilford—Affirming.

Prior to November 16, 1906, the appellant, John S. Combs, was the owner of approximately fifty acres of land on which he resided, situated on the east bank of the north fork of the Kentucky River opposite the mouth of Mason's Creek. On that date he conveyed to the appellees, W. R. Adams and Malinda Adams, his wife, for a consideration of $50, the following described property:

"A certain tract or parcel of land lying and being in the County of Perry and State of Kentucky on the East bank of the North fork of the Ky. river and bounded as follows, viz: Beginning on a water oak and maple on the east bank of the North fork

of the Ky. River opposite P. W. Halls old mill site; thence down the river N 3 E 209 ft. to a stake N 26½ E 291 ft. to a stake at the mouth of a drain; thence up the drain S 78½ E 300 ft. to a stake S 21½ W 385 feet to a stake 580½ W 300 ft. to the beginning."

Claiming that a strip of land including a sand bar and its accretions which the grantees, in conjunction with their son, the appellee, S. A. Adams, had improved and converted into a bathing beach, was not included in the conveyance, the appellant, on August 3, 1936, instituted this action to recover the property in question, as well as its rental value and damages for its detention. The monetary claims appear to have been abandoned and the litigation eventually devolved into a contest over the ownership of the property which the appellees, Adams and his wife, claimed, not only by virtue of the deed from appellant, but by adverse possession. The action was transferred to equity, and the proof taken by depositions, after which the chancellor dismissed the petition and adjudged Adams and his wife to be the owners of the land in litigation, describing it in the judgment as follows:

"Beginning at a water oak on the East Bank of the North Fork of the Kentucky River opposite P. W. Hall's old mill-site thence to the center of the river; thence with the center of the river down the same as it meanders to a point opposite the mouth of a drain; thence a straight line to the mouth of the drain; thence up the drain South 78½ E 300 feet to a stake thence South 21¼ West 385 feet to a stake; thence South 80½ West 300 feet to the beginning."

And this appeal is from that judgment.

The claim of the Adams that the deed from appellant vested them with title to the strip in question is based primarily upon the fact that the "water oak," no longer in existence, was on the river's edge and overhung it, and that the first call of the deed from the beginning point, "water oak and maple on the east bank," is "down the river," which facts, they contend, entitle them to have applied the rule, that unless, from the terms used, the intent of the parties is clearly shown to

be otherwise, a boundary line running up, down, or with a stream will be held to follow and be determined by the meanderings of the stream, notwithstanding the general rule that where a line is described as running from one point to another, it is presumed, unless a different line is described or marked on the ground, to be a straight line. Hylton v. Combs, 229 Ky. 1, 16 S. W. (2d) 754. They further point to the fact that they bought the land for residence purposes, and so utilized it; and that since the land which appellant retained and on which he had built his residence also borders on the river bank, it is inconceivable that it was ever the intention that they should be shut off from the river. Certainly the equities of the case are with the appellees, as the appellant not only has ample river frontage of his own, but stood by and permitted the appellees to improve the strip in question without objection.

The claim of W. R. Adams and his wife that in any event they are entitled to the strip by adverse possession is based upon their testimony that they continuously cultivated the strip in question, built, and for many years operated, a water mill in the river, built dams therein, sold gravel and sand from the strip, always claimed it as their own, and that appellant never asserted any claim to the land until the institution of this suit, after his cupidity had been excited by their improvement and conversion of the property into a bathing beach. Appellant testifies that the erection of the water mill in the river and the use of the strip by appellees was permissive only, but his testimony on this point is not corroborated. In fact, it is flatly contradicted by the appellees and several witnesses introduced by them who testified that appellant at different times had stated to them that the strip in controversy belonged to Adams and his wife.

On the question whether the deed included the beach, perhaps the strongest testimony offered by appellant is that of W. T. Singleton, now 77 years of age, who made the survey in 1906 from which the description in the deed was written, and who says that while he cannot remember the exact beginning point of the boundary, it was his intention to lay off three acres, which fits in with appellant's testimony that the appellee, W. R. Adams, purchased from him three acres of land which he in-

sisted should lie above the high-water mark. In laying out the three acres, Singleton says, that according to his recollection the water oak and the maple were both corner trees, the latter some distance higher up the bank than the former, and that he commenced the boundary at a point half way between the two trees some sixteen feet from the maple, which left a space between the line as run and the river. He had lost his field notes, but these, in the handwriting of one Will Strong who had accompanied the surveyor, were introduced in evidence by the appellees. The notes threw no light on the subject as they merely show the courses and distances given in the deed, but the plat drawn in lead pencil on the back of the paper containing the notes shows a three-acre tract bounded by straight lines with no indication of a river or its meanderings. In view of these facts we are unable to say that the deed as drawn, whether the beginning point be the water oak or a point midway between the water oak and the maple, included the river bank west of the straight lines comprising the western boundary of the track. Probably the deed was so drawn in order to insure that the grantees would receive three acres above the high-water mark, the space below being regarded as worthless to anyone other than the purchasers and passing to them as a matter of course.

However, we find it unnecessary to decide the question whether the deed as drawn vested title to the disputed area in the grantees, since we are convinced that they established their adverse possession of the property in question for more than the requisite statutory period as satisfactorily as it is reasonably possible to establish adverse possession of that type of real property. Britt v. Houser, 171 K. 494, 188 S. W. 628. Fences constructed to the water's edge when the river was low would have been swept away at the river's rise and obviously, all of the property was not cultivatable. While the testimony of the appellees as to the extent to which they actually cultivated the river bank is not strongly corroborated, nevertheless, it is undisputed that in 1908 the appellee, W. R. Adams, constructed in the river in front of his boundary a water mill from which he received all of the profits, and which he and his wife continuously operated for a period of approximately eighteen years, or until it was destroyed by high water.

In conjunction with the mill he built a dam in the river, and it is also in evidence that in 1919 or 1920 a wing dam was constructed. Later on, other wing dams were built to catch sand to build up a sandbar, and in 1930 a bathhouse and soft drink stand were built. At the time the mill was constructed a swinging bridge was built for the use of customers, and about 1932 a footbridge was constructed from the opposite shore leading to the soft drink stand and bathhouse. There is also some evidence that trees were planted by Mrs. Adams in the disputed area immediately after the land was purchased, and that a fence was built which extended from the white oak, constituting the southeast corner of the Adams' land, to the water maple, and at times, beyond, thus separating the Adams' tract, including their claimed portion of the beach, from the land and the beach of appellant on the south.

We have not overlooked the rather unsatisfactory testimony of several witnesses who deny that the property in dispute was cultivated, or the uncorroborated testimony of appellant that the mill and dam were constructed with his permission. Neither have we attached much importance to the testimony offered by appellees as to their cultivation or fencing of the boundary. Standing alone, it would be insufficient. But we see no escape from the conclusion that appellees' thirty years' use of the river and bank, first for the construction of the mill with its dam, and later for the enlargement of the sand bar by the use of the wing dams, and finally, for the operation of a pleasure resort with its attendant footbridge, soft drink stand and bathhouse, was the exercise by them of such continued, exclusive, open, and notorious dominion over the disputed area as to constitute adverse possession and thus vest them with title by prescription to the property in question.

Judgment affirmed.