## Riley v. Jones et al.

Oct. 8, 1943.

J. Wood Vance for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Prior to October 22, 1914, T. F. Harston owned a large boundary of land which included two tracts containing 300 and 1,000 acres respectively. Whether these parcels were conveyed to him by separate conveyances does not appear, nor is it material to the present controversy. On the date mentioned, Harston conveyed the 300-acre tract to J. H. Yates, who, on December 21, 1917, deeded it to Louiston M. Fairbanks. In the deed from Harston to Yates, but not in the deed from Yates to Fairbanks, it was stipulated that the "parties of the first part reserve a right-of-way for a water pipe from the 'gum spring' on the land above conveyed to the barn of the first party, pipe to be laid under the ground." On January 31, 1917, Harston conveyed the 1,000-acre tract, on which the barn referred to was situated, to Luther M. Fairbanks who, on March 19, 1917, conveyed the 1,000 acres to Louiston M. Fairbanks. In neither of the two latter deeds was there any mention of the reservation referred to. On March 29, 1919, J. H. Jones, by deed from C. R. Maddox, to whom Louiston M. Fairbanks had conveyed the 1,000-acre tract, acquired title to that portion thereof on which the barn was situated. Thereafter, Mrs. Jones, under the will of her husband, acquired the title for life, with power to sell or dispose of one-third of it. The appellee, Sellus Hurt, was Mrs. Jones' tenant, and precipitated the present litigation over Mrs. Jones' right to receive water from the spring by causing a valve to be placed in one of the pipes in the springhouse, which act angered the appellant, W. F. Riley, the present owner of the 300-acre tract, on which the spring is situated, and caused him to remove the pipe from which Mrs. Jones received her water supply. Hurt claims that the valve was installed with appellant's consent and that it did not interfere with the latter obtaining from the spring all the water which he required. However, it is not necessary to discuss the evidence bearing upon the origin of the controversy, since the only material question is the right of Mrs. Jones, as decreed by the Chancellor in granting her

prayer for an injunction: "* * * to maintain a pipe line including water containers and apparatus at the Gum Springs and pipe line running from said Gum Springs on the land of defendant hereinafter described to the land of plaintiff as has been established and was established and maintained at the time of the beginning of the controversy herein between plaintiffs and defendant which arrangement of said pipe line and water containers appears to have given for use on plaintiffs land practically one-half of the flow of the water from said spring."

Appellant's denial of the existence of this right in Mrs. Jones, whom we shall hereafter refer to as the appellee, is based in part on the fact that the title to both the 300-acre tract and the 1,000-acre tract was merged in Louiston M. Fairbanks, which had the effect of extinguishing the pre-existing easement, and that when Louiston M. Fairbanks conveyed the 300-acre tract to R. C. and G. B. Lovelady on January 29, 1919, he failed to reserve any rights to receive water from the spring. Appellee counters this contention by invoking the doctrine that where the right reserved is indisputably for the beneficial use of the dominant estate, it is merely suspended by the unity of possession of the dominant and servient estate, and revived, or, if regarded as extinguished, regranted by necessary implication upon the severance of the possession. An examination of the authorities convinces us that this doctrine only applies to "Ways of Necessity," for example, where the dominant estate has no outlet to a public road except over the servient estate. It might be applicable here had it been shown that the original dominant estate was necessarily dependent for water upon the spring on the 300-acre tract, but no such showing was made. Neither do we regard as sufficient of itself to sustain appellee's right the fact that in the deed from G. B. Lovelady's trustee in bankruptcy conveying the 300-acre tract to R. H. Norris and the subsequent deeds from R. H. Norris to John and Dix McComas, and from John and Dix McComas to appellant, the latter dated January 4, 1939, the recitals in the original deed from Harston to Yates relative to the pipe line from the spring to the barn were incorporated. Obviously, these recitals were inserted by the bankruptcy trustee and the subsequent grantors merely as a precautionary measure, since at that time there was no privity between the owners of the 300-acre tract and

those individuals who had acquired portions of the 1,000-acre tract. However, these recitals did have the effect of putting the appellant upon notice of the existence of the water pipe from the spring on his land to the barn on appellees' land, and the knowledge thus imparted is a material factor in determining whether, having failed to establish an easement in the water line by direct or implied conveyance, appellee, .as contended by her, has established a prescriptive right to her present use of the water from appellant's spring.

It is conceded by appellant that one may establish by adverse possession the right to use a well or spring on the land of another. Gentry v. Piercy, 175 Ky. 174, 193 S. W. 1017. But he argues that in order to establish title by prescription, the adverse possession must be actual, open, notorious, forcible, exclusive, and hostile, and that it must continue in full force and vigor during each and every hour of every day for at least fifteen years. With these general principles we have no quarrel, but obviously, the physical nature of the thing possessed must determine the character of the acts necessary to impart notice that the right to use or possess is asserted and exercised without consent, continuously, and in open hostility to anyone's right to interfere. For example, it is impossible to continuously exercise the same acts of dominion over a river bank, sand bar and its accretions as an adverse possessor could exercise over pasture land or woodland, the area and usability of which are not affected by the rise and fall of a stream. Combs v. Adams et al., 282 Ky. 629, 139 S. W. (2d) 447. A pipe conveying water is usually laid underground, and hence is not visible except at its inlet and outlet. Yet, if the owner of the land which it occupies throughout its length has notice of its existence, it could hardly be said that the right to maintain it was not adverse because the pipe was not visible or its use apparent. Appellee testified that the barn to which the water was piped burned, but that when she moved to the property in 1920, the water from the spring had been piped into the house, and "has been running over since just like it was then." She further testified that during the time the Loveladys owned the tract on which the spring was situated, one of them "kept fish in my water barrel and fed them bread so I put a lid on the barrel and locked it." Appellant complains that there is no other evidence in the record indicating that appellee's claim to .the use of the water from the spring

was hostile, and that the evidence quoted was insufficient to apprise the owners of the spring that her claim was asserted as a matter of right. But the evidence showed that appellee's pipe line was connected to the spring above the springhouse, and ran into the springhouse and into the barrel which was used as a reservoir, and that the direct pipeline to appellee's property was connected to the barrel. These facts were known to the appellant and his predecessors in title, two of whom, R. H. Norris and Dix McComas, testified that they recognized Mrs. Jones' right to the use of the water. Furthermore, appellee testified, without objection, that during the time the spring property was owned by the Loveladys, a dispute arose relative to appellee's right to use the water, and that "Lovelady went to see Logan Porter and John consulted Basil Richardson and later on Logan Porter and Basil Richardson said they had come to an agreement that Richardson was right and that they had come to the conclusion that John (Mrs. Jones' husband) had a right of way to the water. Richardson wrote that in a letter to John and I have it now."

Moreover, it should not be overlooked that the right to use the water originated in a reservation by the owner of the spring property when he parted with his title to it, and not through a permission granted by the owner of the spring, and that there is no indication in the evidence that anyone's consent to the use of the water was thereafter asked or granted. On the whole, we think the record clearly indicates that appellee's use of the water from the spring was of such a nature as to ripen into a prescriptive right after the lapse of fifteen years.

Judgment affirmed.