## Ely v. Fuson.

April 28, 1944.

326

Robert J. Watson and E. P. Nicholson, Jr., for appellant.

R. L. Maddox for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

The appellant and plaintiff below, Curtis Ely, brought this action in ejectment against R. G. Fuson to recover possession of vacant lot 4 in block 204 in the northwest section of the City of Middlesboro. The verdict was in favor of defendant and from the judgment entered thereon Ely appeals.

The petition avers Ely was the legal owner and entitled to the possession of the lot. The answer and counterclaim denied his title and pleaded title in de-

fendant by adverse possession. Plaintiff's proof consisted of the introduction of records by which he traced his title back to the Commonwealth. His immediate vendor was H. W. Horr, who had obtained title by a devise from his wife, Bertha.

Defendant's proof was that this vacant lot was located on Dorchester Avenue on the outskirts of Middlesboro and is across the street from where he lives. When defendant took possession of this lot in 1913 or 1914 on the theory, as he says, that it belonged to no one, there was a fence around it. He repaired the fence, cut grass off the lot for hay and cultivated it in peas and corn. When the fence wore out after some fifteen or sixteen years he did not rebuild it because there was a stock law in effect but he continued to cultivate the lot under claim of ownership for 27 consecutive years. By a niece, nephew and several neighbors, defendant proved he had cut hay off this lot, had cultivated it and exercised ownership over it for more than 20 years. We find nowhere in the record that defendant listed this property for taxation. Although he testified he paid the street improvement assessed against the lot, that fact was denied and he produced no receipt or other evidence of payment.

In rebuttal plaintiff proved that Mrs. Bertha Horr had this property fenced in 1911. The Horr family moved to Corbin in 1920, then to Florida, a few years later, and upon their return to Middlesboro in 1928 they inspected the street laid abutting this lot and found the fence completely gone and that some one had a garden on it. They made no objection to the garden as they did not desire to build on the lot. E. P. Nicholson, the attorney who made the street improvement collections, testified that the assessment against this lot was paid by the Horr family. John D. Rhodes testified in chief that he was one of the commissioners appointed by the federal court in a suit brought by the contractor who constructed this street and no one was in possession of the lot but he ascertained the property was owned by Mrs. Horr.

Plaintiff offered an instruction that the court should find for him unless the jury believed from the evidence that for 15 years or more before the institution of this action defendant had been in the actual, adverse, open, notorious, hostile and continuous possession of the lot

claiming same as his own. In a separate paragraph this instruction defined adverse possession as an actual entry on the lot by residence thereon, or enclosure thereof, with intention to possess and hold same against all persons. This made the proffered instruction erroneous as there is no rule of law requiring residence on property to constitute adverse possession, nor does there have to be an enclosure thereof. It is sufficient if the lot be held to a well-marked or defined boundary. Reichert v. Ellis Ferry Co., 184 Ky. 150, 211 S. W. 403; Heinrichs v. Polking, 185 Ky. 433, 215 S. W. 179.

The plaintiff having offered an incorrect instruction covering the whole case, it was the duty of the court to give the correct one. While the criticised part of the instruction is in accord with Sec. 67, p. 91 of Stanley's Instructons to Juries, which was taken from Wilson v. Caughlin, 187 Ky. 221, 218 S. W. 1010, an examination of the opinion on the first appeal of Caughlin v. Wilson, 167 Ky. 35, 180 S. W. 40, shows that a dwelling had been erected on the land and occupied by a "squatter." In the instant case there was no evidence of defendant having resided upon this lot, hence no reference to residence should have been made in the instruction.

The first instruction given by the court told the jury if they believed from the evidence that the record title introduced by plaintiff embraced this lot, to find for him; but unless they so believed, to find for defendant; or if they believed as set out in the second instruction, they should find for defendant. This second instruction told the jury that if they believed from the evidence that defendant "has at any one time been in the actual, adverse possession of lot No. 4 described in the pleadings herein for as long as 15 consecutive years continuously, claiming same as his own, they will find for the defendant, and if the jury shall believe from the evidence that the defendant had said lot of land enclosed in a fence for as long as 15 consecutive years continuously, claiming same as his own, they will find for the defendant."

There is no conflict in the evidence as to plaintiff's record title covering this lot, therefore the court in the first instruction should have assumed that it did. Stanley's Instructions to Juries, Sec. 25, p. 40; Black v. Terry, 157 Ky. 600, 163 S. W. 737; Cowles v. Carrier, 101 S. W. 916, 31 Ky. Law Rep. 229. We do not hold that

it was reversible error for the court to submit this fact to the jury as plaintiff was not prejudiced thereby, but it is better form to instruct that plaintiff had shown legal title to the lot and the jury should find for him unless they believe from the evidence "that defendant for 15 years or more before the institution of this action had been in the actual, adverse, open, notorious, visible, hostile and continuous possession of the lot in controversy, claiming same as his own to a well-marked or defined boundary, in which event they will find for defendant."

It is apparent that the error in the instruction given by the court is that it did not correctly define adverse possession which this court has in many opinions said must be "actual, open, notorous, hostile and continuous," Ahart v. Wilson, 211 Ky. 682, 277 S. W. 1007; Flinn v. Blakeman, 254 Ky. 416, 71 S. W. (2d) 961; Culton v. Simpson, 265 Ky. 343, 96 S. W. (2d) 856. It was said in the Ahart opinion "there must have been such open and notorious acts of physical possession as would put the owner upon notice of the assertion of the hostile claim." Practically the same language was used in Miller v. Cumberland Petroleum Co., 269 Ky. 525, 108 S. W. 514. In the Culton opinion [256 Ky. 343, 96 S. W. (2d) 858] the court defined adverse possession as "actual, continuous, open, notorious, visible, exclusive, hostile, and under a claim of ownership."

Due to the peculiar facts of this case we think that the court should have defined adverse possession as it was set out in the Culton opinion. We have said that the character of the property, its physical nature and the use to which it has been put, determines the character of acts necessary to put the true owner on notice that a hostile claim is being asserted. Britt v. Houser, 171 Ky. 494, 188 S. W. 628; Combs v. Adams, 282 Ky. 629, 139 S. W. (2d) 447; Riley v. Jones, 295 Ky. 389, 174 S. W. (2d) 530.

The property involved is a vacant city lot and as defendant's only possession was cutting hay off of it in the summer and cultivating it during that season, his hostile possession, if any there was, should have been visible and of such a nature as would put the owner upon notice in the winter or throughout the entire year that defendant was asserting a claim hostile to his title. It was said in Wilson v. Caughlin, 187 Ky. 221, 218 S. W. 1010,

that instructions defining adverse possession are seldom couched in the same terms. The reason is that the facts are seldom the same in any two cases and the instructions should cover the facts adduced by the proof.

We expressly decline to pass on whether the verdict is flagrantly against the evidence and that under Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, plaintiff's motion for a peremptory instruction should have been sustained as a new trial is necessary and we do not know what testimony may be introduced thereon.

The judgment is reversed for proceedings consistent with this opinion.