**The ELK HORN COAL CORPORATION, a
Corporation, Appellant,**

v.

**KENTUCKY–WEST VIRGINIA GAS COMPANY, a Corporation, et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 5, 1957.

Rehearing Denied Nov. 28, 1958.

See also Ky., 307 S.W.2d 776.

J. Woodford Howard, Howard & Francis, Prestonsburg, J. Henry Francis, Jr., Charleston, W. Va., for appellant.

C. Kilmer Combs, Combs & Combs, Prestonsburg, for appellees.

CULLEN, Commissioner.

The Elk Horn Coal Corporation brought action against Kentucky-West Virginia Gas Company and a construction company working under contract with the gas company, to enjoin the construction of a gas pipe line across some 48 tracts of land on which the coal corporation holds coal leases. Temporary injunctive relief was sought but was not obtained, and the pipe line was substantially completed pending the action.

The parties made a stipulation concerning the title papers covering 10 of the tracts involved, and the case was submitted as to those 10 tracts, with the view that they were representative of all of the tracts and the decision concerning them would substantially dispose of the entire case. The court entered judgment in favor of the defendants, finding that the gas company had the right to construct and operate the pipe line; its construction and operation would not invade or infringe upon any of the rights of the coal corporation and would not interfere with the mining of coal; and the coal corporation was not entitled to damages. The coal corporation has appealed.

The issue presented is whether the construction and operation of the pipe line invades the property rights of the coal corporation.

The pipe line is of welded steel pipe, 12 inches in diameter, buried from 18 to 24 inches below the surface of the ground. It runs from Osborne Gap, on the Virginia-Kentucky state line, to Maytown, in Floyd County, Kentucky. Gas is purchased by the gas company from Clinchfield Coal Corporation, a Virginia and West Virginia producer, and delivered by that corporation in its pipe lines to Osborne Gap. From that point it is carried through the gas company's pipe line to a hydrocarbon plant

located at Maytown, operated by Carbide & Carbon Chemicals Corporation. The gas company has a contract with the carbide corporation under which the gas is "stripped" of hydrocarbons and then turned back to the gas company for ultimate sale and delivery to gas consumers. The pipe line is not designed or intended to carry gas produced from the mineral field in Floyd County over which it passes, although there is some possibility that a small amount of gas from a Pike County field might be carried through it.

In six of the ten tracts included in the stipulation, the coal corporation's predecessor in title acquired mineral rights under a standard form of deed known as the "Northern" form. The printed deed form purported to convey all of the minerals, but in the deeds to three of the tracts the gas and oil were excepted by a typewritten insertion. All six deeds contained a clause conveying to the grantee:

" * * * exclusive rights-of-way for any and all railroads, tram roads, haul roads and other ways, pipe lines, telephone and telegraph lines that may hereafter be located on said land by the parties of the first part, their heirs, representatives or assigns, or by the party of the second part, its successors or assigns, or by any person or corporation with or without the authority of either of said parties, their, or its heirs, representatives, successors or assigns, and also the right to maintain, keep in repair and operate the same and said railroads, tram roads, haul roads, ways, pipe lines, telephone and telegraph lines, * * *"

The coal corporation maintains that under the grant of "exclusive rights-of-way" it has acquired complete control and ownership of the surface of the land as far as any rights of way are concerned, and that it alone can grant rights of way. The gas company contends that the deeds, to the extent that they mentioned "pipe lines," con-

templated only that the grantee should have pipe line easements *appurtenant* to the oil and gas in the land; that with respect to the three deeds in which the oil and gas were excepted the coal corporation's predecessor never acquired any pipe line rights; and that with respect to the other three tracts the coal corporation, by subsequent conveyances of the oil and gas to other persons, divested itself of any and all pipe line rights.

We think the answer to these contentions is found in Cornett v. Louisville & Nashville R. Co., 298 Ky. 95, 182 S.W.2d 230, and Louisville & Nashville R. Co. v. Quillen, Ky., 242 S.W.2d 95, both of which cases involved rights under the "Northern" form of mineral deed. In the Cornett case the grantee of the mineral rights conveyed a right of way to the L. & N. Railroad for general railroad purposes. The surface owner objected. The court held that the conveyance was valid, saying (182 S.W.2d at page 231):

" * * * That language can purport but one meaning, i. e., the intention of the parties to permit the grantee in the deed to authorize a person or corporation not mentioned in the deed * * * to build, operate, and maintain a railroad over the surface now owned by appellant, without limitation of its use, and without interference by appellant. * * * Since the right of way was granted to the Coal Corporation, neither the grantor nor his successor in title to the surface of the land had the right to use the land for that purpose without permission of the Coal Corporation. Neither would any other person or corporation have the right to build a railroad on the property without the permission of the Coal Corporation, or without rendering himself or itself liable to the Coal Corporation for the fair value of the right. * * *"

The contention was made in the Cornett case, as here, that the mineral deed intended that any railroad right of way be limited in

its use to removing coal mined on the property covered by the deed, i. e., that the deed conveyed only *appurtenant* easements, but that contention was expressly rejected.

In the Quillen case, the L. & N. Railroad sought to condemn a right of way, for general railroad purposes, over a tract of land on which the mineral rights were held by a land company under the "Northern" form of deed. The railroad joined the land company and the surface owner as defendants. The court held that the land company was entitled to *all* of the damages awarded, and that the surface owner had no interest in any rights of way on the land.

The Cornett and Quillen cases clearly uphold the claim of the coal corporation here that the mineral deeds gave it complete control over rights of way, and negative the contention of the gas company that the mineral deeds conveyed only *appurtenant* easements. As said in the Quillen case, 242 S.W.2d at page 96:

" * * * The grantors clearly relinquished all interest in any rights of way.

(and)

" * * * the owner of the surface * . * * has * * * conveyed away his entire interest in all of the rights of way. * * * "

The gas company argues that there can be only two kinds of easements, namely, easements in gross and easements appurtenant; that the easement under the "Northern" form of deed obviously was not one in gross (which would have been personal to the original grantee and not assignable to the coal corporation), and therefore it must have been one appurtenant to the oil and gas in the land. The simple answer to this argument is, that the deed did not purport to convey *an easement,* but rather *ownership of the surface* as concerned future grants of easements. The grantee did not receive a mere easement, but the easement-granting power.

A further contention of the gas company is that a grant of exclusive rights of way is contrary to public policy, and therefore void. In support of this proposition the company cites Calor Oil & Gas Co. v. Franzell, 128 Ky. 715, 109 S.W. 328, 329, 36 L.R.A.,N.S., 456. However, it appears that in the Franzell case the grant of the "exclusive right and privilege" of laying pipe lines across a certain tract of land was for the obvious purpose of preventing a competing gas company from laying a pipe line to give gas service to the City of Louisville, and the public policy held to be violated was that against monopolies and restraint of trade. The same is true of West Virginia Transportation Co. v. Ohio River Pipe Line Co., 22 W.Va. 600, 46 Am.Rep. 527, which is cited by Summers, along with the Franzell case, as sole authority for a statement that a grant of exclusive rights of way for a pipe line is void "as a contract in restraint of trade." See Summers, Oil and Gas, Vol. 4, sec. 758, pp. 190, 191. In the instant case, there is no suggestion of any purpose of monopoly or restraint of trade in the taking of the original "Northern" form deeds; on the contrary, it appears that the grantee of the mineral rights simply wanted to control the surface so as to prevent any possible interference with his mineral operations. In the Cornett and Quillen cases, hereinbefore discussed, the exclusive grants were unequivocally held valid, without even a suggestion that public policy might be involved. In the Quillen case there was an argument made that the exclusive grant created *inequities,* but the court said, "we think not."

It is our opinion that the elements of monopoly and restraint of trade on which the Franzell opinion was based are not present here, and the Franzell case therefore has no application.

Proceeding now on the basis that the coal corporation received a valid grant of exclusive rights of way, we face the conten-

tion of the gas company that with respect to three of the tracts of land the coal corporation conveyed to the gas company all of its rights concerning pipe lines. These three tracts are the ones in which the coal corporation acquired the gas and oil, in addition to the other minerals, under the original mineral deeds.

■ By a lease known as the "Dimick" lease, the coal corporation conveyed to the gas company the gas and oil in one tract, "with the right to lay and operate pipe lines." (Other tracts than those included in the stipulation also were embraced by the Dimick lease.) This obviously was a conveyance only of *appurtenant* pipe line rights. See Kentucky Pipe Line Co. v. Hatfield, 223 Ky. 315, 3 S.W.2d 654. The gas company agrees that the Dimick lease conveyed only appurtenant pipe line rights, but argues that the coal corporation itself never had any pipe line rights other than appurtenant ones, and therefore the lease conveyed *all* of the coal corporation's pipe line rights. As hereinbefore indicated in this opinion, we think the coal corporation had complete ownership of the surface as concerns right of way uses, and was not limited to appurtenant easements; accordingly, the foundation for the gas company's argument fails. The effect of the Dimick lease, then, was to convey to the gas company the right to construct pipe lines across the leased tracts to carry oil and gas *from those tracts,* but not to carry oil or gas from a different source.

■ By a deed known as the "Graf" deed, the coal corporation conveyed to the gas company the oil and gas in two tracts (along with certain other tracts not included in the stipulation). This deed conveyed to the gas company "the appurtenant easements * * * for the purpose of * * * transporting said oil and gas discovered in, on and under any and all of the said tracts of land, as well as the oil and gas discovered in, on and under any and all other tracts of land owned or hereafter owned by the

* * * (grantee) * * *, his heirs or assigns by deed, lease or otherwise * * *." The arguments with respect to this deed are the same as those made concerning the Dimick lease, and the answers are the same, except to the extent that the Graf deed grants easements for transporting gas and oil from "other tracts" owned or acquired by the grantee. It is contended that the gas company's contract with the Clinchfield Coal Corporation, by which the latter company agrees to sell to the gas company the gas from certain specified Virginia and West Virginia tracts, and "dedicates" those tracts to such use, in effect gives the gas company some kind of ownership interest in those tracts. However, we think it is obvious that the Graf deed, in referring to "land owned" by the grantee, meant land in which the grantee owned the oil and gas by customary form of ownership, and did not intend to include land as to which the grantee held only a production purchase right. Another contention is that the possible use of the pipe line to transport gas from some Pike County land owned by the gas company brings the pipe line within the scope of the Graf deed. We think the Graf deed would permit the construction of a pipe line to carry gas from Pike County land owned by the gas company, but the pipe line here involved is not designed nor intended for that primary purpose, and obviously is much larger than would be required for that purpose alone. In no event does the Graf deed authorize the use of the pipe line to transport the gas purchased from Clinchfield.

Our conclusion concerning the six tracts of land covered by the "Northern" form of mineral deed is that the coal corporation owns the exclusive rights of way for pipe lines over those tracts, except such appurtenant rights of way as have been conveyed by the coal corporation in connection with its sale of oil and gas rights, and that the construction and operation of the pipe line in question invades the coal corporation's property rights.

As concerns the remaining four tracts covered by the stipulation, the coal corporation holds only ordinary coal mining leases, conveying the coal and such rights to use of the surface as are necessary to its mining operations. As to these tracts, the issue boils down to the simple question of whether the pipe line unduly interferes with the coal mining operations. The contention of the coal corporation is that, in order to safeguard adequately against the possibility of a break in the gas line, causing gas to be drawn into the mine through the ventilating system, with the resulting danger of explosion, the coal corporation must leave a strata of coal 100 feet in width on each side of the line, as a barrier against subsidence. This, it is argued, would prevent the coal corporation from fully utilizing its coal resources, and would unduly interfere with and complicate its mining operations. Without elaboration, we will say simply that the proof on the necessity of leaving such a barrier, and the danger of leakage and explosion, was in conflict, and there is no basis upon which we could hold to be clearly erroneous the finding of the trial court that the pipe line would not interfere with the coal mining operations.

Our ultimate conclusion is, then, that the judgment is correct in sustaining the right of the gas company to build its pipe line over the tracts not covered by the "Northern" form mineral deed, and in holding that the pipe line does not interfere with or damage the coal mining operations, but is erroneous in holding that the construction of the pipe line does not invade or infringe upon the property rights of the coal corporation in the tracts covered by the "Northern" form mineral deed.

The judgment accordingly is affirmed in part and reversed in part, with directions that the judgment be set aside with respect to the tracts covered by the "Northern" form of mineral deed and that further proceedings be had in accordance with this opinion for determination of appropriate relief to be granted to the plaintiff.