COLUMBIA GAS TRANSMISSION CORPORATION, Appellant,

v.

CONSOL OF KENTUCKY, INC., Formerly Known as Consolidation Coal Company of Kentucky, Appellee.

No. 1998–SC–0135–DG.

Supreme Court of Kentucky.

Feb. 24, 2000.

As Amended March 22, 2000.

As Amended March 30, 2000.

As Modified on Denial of Rehearing May 18, 2000.

Shelby C. Kinkead, Jr., Wayne F. Collier, Kinkead & Stilz, Lexington, Harry Bruner, Corporate Counsel, Columbia Gas Transmission Corp., Charleston, WV, for Appellant.

D.B. Kazee, Kazee, Kinner & Chafin, Prestonsburg, Jeff A. Woods, Karen J. Greenwell, Wyatt, Tarrant & Combs, Lexington, for Appellee.

COOPER, Justice.

Columbia Gas Transmission Corporation ("TCO") is the owner of a natural gas pipeline, P–66, which crosses two tracts of property now owned by Consol of Kentucky, Inc. (formerly Consolidation Coal Company of Kentucky, Inc.), in Floyd County, Kentucky. When Consol decided to mine the coal beneath those tracts, it became necessary to move P–66 to another location. With TCO's consent, Consol relocated P–66 to another segment of its property at its own expense. Consol then brought this civil action in the Floyd Circuit Court to recover the expenses attendant to the relocation. The outcome of this case depends upon whether TCO had acquired a prescriptive easement across Consol's property for the original right-of-way of P–66. The Floyd Circuit Court determined that TCO had not acquired an easement and entered judgment in favor of Consol. The Court of Appeals affirmed. We granted discretionary review and now reverse.

## I. THE EASEMENT–GRANTING POWER.

The two tracts in question were once owned respectively by William Oney and his wife, Sarah Oney, and by Amanda J. Martin and her husband, F.F. Martin. By deeds dated April 6, 1903 from the Oneys and June 23, 1903 from the Martins, Consol's predecessor in interest, Northern Coal and Coke Company, acquired the mineral interests beneath both tracts. In addition to the mineral estate, these broad form deeds, commonly known as "Northern form" deeds, also conveyed:

[T]he exclusive rights-of-way for any and all railroads, tram roads, haul roads and other ways, pipe lines, telephone and telegraph lines that may hereafter be located on said land by the parties of the first part, their heirs, representatives or assigns, or by the party of the second part, its successors or assigns, or by any person or corporation with or without the authority of either of said parties, their, or its, heirs, representatives, successors or assigns. . . .

Citing Harry Caudill, *Theirs Be the Power: The Moguls of Eastern Kentucky* (U. of Ill. Press 1983) and Carolyn Clay Turner and Carolyn Hay Traum, *John C.C. Mayo Cumberland Capitalist* (Pikeville College Press 1983), Appellant asserts that Northern Coal and Coke Company used its Northern form of deed to acquire mineral interests in hundreds of thousands of acres of land in eastern Kentucky. On three occasions, our predecessor court was called upon to interpret the meaning of the so-called "easement-granting" clause quoted above. On each occasion, the clause was held to convey to the grantee of the mineral estate the easement-granting power with respect to the surface estate.

In *Cornett v. Louisville & Nashville R. Co.*, 298 Ky. 95, 182 S.W.2d 230 (1944), the owner of the surface estate sought to enjoin the grantee of a Northern form deed from granting an easement to a railroad company for the construction of a commercial railroad line across the surface of the property. The surface owner asserted that the easement-granting clause only pertained to easements appurtenant to the mineral estate, *i.e.*, those easements necessary for the mining and removal of coal or other minerals from beneath the surface of the property. The Court held that the easement-granting clause contained no such restriction and that the owner of the mineral estate possessed the sole power to grant a railroad right-of-way easement across the surface estate.

In *Louisville & N.R. Co. v. Quillen*, Ky., 242 S.W.2d 95 (1951), the railroad sought to condemn a right-of-way across property severed by a Northern form deed. The issue was whether the condemnation proceeds were payable to the surface owner or to the owner of the mineral estate. It was held that the owner of the mineral estate, as owner of the easement-granting power, was entitled to the proceeds. (During the pendency of the litigation, the railroad purchased the right-of-way from the holder of the mineral estate, so the upshot was that the railroad was entitled to repayment of the condemnation proceeds which it had previously paid into court.)

In *Elk Horn Coal Corp. v. Kentucky–West Virginia Gas Co.*, Ky., 317 S.W.2d 472 (1957), the issue was whether the owner of the mineral rights to forty-eight separate tracts of land could enjoin the construction of a pipeline across the surface of those tracts. The plaintiff had acquired its interest in some of the tracts by Northern form deeds and in others by deeds which did not contain an easement-granting clause. The plaintiff was held entitled to relief with respect to the tracts acquired by Northern form deeds, but not with respect to tracts acquired by other forms of deed. The opinion had this to say about the easement-granting clause in the Northern form deeds:

The Cornett and Quillen cases clearly uphold the claim of the coal corporation here that the mineral deeds gave it complete control over rights of way, and negative the contention of the gas company that the mineral deeds conveyed only *appurtenant* easements.

. . . .

The simple answer to this argument is, that the deed did not purport to convey *an easement,* but rather *ownership of the surface* as concerned future grants of easements. The grantee did not receive a mere easement, but the easement-granting power.

. . . .

As hereinbefore indicated in this opinion, we think the coal corporation had complete ownership of the surface as concerns right of way uses, and was not limited to appurtenant easements. . . .

*Id.* at 475, 476 (emphasis in original).

(In *Elk Horn Coal*, there was no claim of a prescriptive easement because the action for injunctive relief was brought within the statutory period of limitations.)

## II. THE EASEMENT CLAIM.

On September 7, 1948, Gold and Sarah Reed, successors in interest to the Oneys, and Green Gearhart, successor in interest to the Martins, purported to convey right-of-way easements over their properties to TCO's predecessor in interest, United Fuel Gas Company, for the purpose of construction and maintenance of pipeline P–66. Construction was completed in 1949 and TCO claims that P–66 has been used to transmit gas across the Reed and Gearhart tracts continuously since that time. On September 19, 1989, Consol purchased the surface estates of both tracts from the successors in interest to the Reeds and Gearhart. In 1991, Consol notified TCO of its intent to mine the mineral estate and demanded removal of P–66. TCO refused, Consol relocated P–66 at its own expense, and this lawsuit ensued.

TCO admits that pursuant to the case law interpreting the easement-granting clause contained in the Northern form deeds by which Consol's predecessor acquired its interest in the mineral estate from the Oneys and the Martins, the Reeds and Gearhart had no right to grant pipeline easements across their properties, and that their attempts to grant such easements to United Fuel Gas Company in 1948 were nullities. However, TCO claims to have acquired a prescriptive easement across Consol's property as a result of its continued use of the pipeline right-of-way for forty-three years before its attempted ouster by Consol in 1991.

The right to acquire an easement by prescription is of ancient origin and is grounded in the common law. *Hall v. McLeod,* 59 Ky. (2 Metc.) 98 (1859). As with adverse possession of a fee simple estate, a prescriptive easement can be acquired by actual, hostile, open and notorious, exclusive, and continuous possession of the property for the statutory period of fifteen years. KRS 413.010 (fifteen years); *Riggs v. Ketner,* 299 Ky. 754, 187 S.W.2d 287 (1945) (private water pipeline); *Riley v. Jones,* 295 Ky. 389, 174 S.W.2d 530, 531, 532 (1943) (underground water pipeline); *Pickel v. Cornett,* 285 Ky. 189, 147 S.W.2d 381, 382 (1941) (prescriptive easements generally). The acts necessary to acquire an easement by prescription depend on the nature of the interest to be possessed:

[T]he physical nature of the thing possessed must determine the character of the acts necessary to impart notice that the right to use or possess is asserted and exercised without consent, continuously, and in open hostility to anyone's right to interfere. For example, it is impossible to continuously exercise the same acts of dominion over a river bank, sand bar and its accretions as an adverse possessor could exercise over pasture land or woodland, the area and usability of which are not affected by the rise and fall of a stream. Combs v. Adams et al., 282 Ky. 629, 139 S.W.2d 447. A pipe conveying water is usually laid underground, and hence is not visible except at its inlet and outlet. Yet, if the owner of the land which it occupies throughout its length has notice of its existence, it could hardly be said that the right to maintain it was not adverse because the pipe was not visible or its use apparent.

*Riley v. Jones, supra,* 174 S.W.2d at 532. TCO asserts that P–66 was located partially below and partially above the surface, and that at least one metering station housing gas-measuring devices was clearly visible on the surface for many years. However, the Circuit Court never reached the facts supporting TCO's claim of pres-

criptive possession, but granted summary judgment to Consol on the basis of KRS 381.430.

## III. THE STATUTORY TRUST.

■ KRS 381.430 reads as follows:

**Possession of minerals and other interests in land—Effect on possession of surface.**—Wherever the mineral or other interests in or rights appurtenant to land in this state have passed, or shall hereafter pass, in any way, from a claimant in possession of the surface of the land, the continuity of the possession of such mineral, interests and rights shall not be deemed thereby to have been broken; but the possession of the surface by the original claimant thereof, from whom such mineral, interests or rights passed, or by those claiming through or under him, or by virtue of a judgment against him in an action to which the holder of the mineral, interests or rights is not a party, shall be deemed to be for the benefit of the person, his heirs and assigns, to whom the mineral, interests or rights have passed.

■ The statute was first enacted in 1906 as KS 2366a–1. 1906 Ky.Acts ch. 7 § 1. The language of the statute has undergone some minor amendments in the intervening ninety-four years, none of which are material to the issues in this case. In *Farnsworth v. Barret*, 146 Ky. 556, 142 S.W. 1049 (1912), the statute was held to preclude a claim of adverse possession of the mineral estate by the successor in title to the grantor/owner of the surface estate, because the language of the statute was "merely declaratory of the common law … that possession of the surface does not give possession of the mining rights which had been sold, but, on the contrary, presumes that the holder of the surface was only a trustee, and held possession for the benefit of the owner of the mineral." *Id.*, 142 S.W. at 1052. (See *Herrel v. Porter*, 8 Ky.Op. 265 (1874) for pre-existing common law.) As a result,

mere possession of the surface estate cannot constitute adverse possession of the mineral estate. Consol posits that the language extending the scope of KRS 381.430 to "other interests in … land" includes the easement-granting power conveyed by the Northern form deeds and precludes TCO from holding the pipeline easement adversely to Consol's easement-granting interest. However, the case of *George T. Stagg Co. v. Frankfort Modes Glass Works*, 175 Ky. 330, 194 S.W. 333 (1917) holds precisely to the contrary.

> Neither do we think that the provisions of section 2366a of the Kentucky statutes (act of 1906), nor the opinion of this court in the case of Farnsworth v. Barret, 146 Ky. 556, 142 S.W. 1049, applying that statute, in any manner affect the questions presented by this record. That statute has reference only to mineral rights which are natural formations, and has nothing to do with artificial, subterranean easements, such as pipes for the conducting of water, gas, or other like purposes.

*Id.*, 194 S.W. at 337. The artificial trust created by the statute is necessitated by the fact that the owner of a mineral estate has no protectible interest in the surface, thus takes no notice of conditions of the surface and has no standing to affect them. H. Williams and C. Meyers, *Oil and Gas Law*, Vol. 1, Adverse Possession and Trespass § 224.1, at 350.2 (M. Bender 1959 & Supp.1998). But since the easement-granting power is an interest in the surface estate, Consol had the power to oust TCO from its claimed easement before the expiration of the period of limitations, *Elk Horn Coal Corp. v. Kentucky–West Virginia Gas Co., supra*, thus did not need the protection of an artificial trust.

■ Regardless, the statute clearly applies only to the grantor of the mineral rights or "those claiming through or under him." TCO is not claiming "through or under" the 1948 owners of the surface estates. All agree that the 1948 attempted grants of easement were nullities, because

the purported grantors had no easement-granting power. Rather, TCO is relying on its own prescriptive possession of the pipeline right-of-way for more than the statutory period of fifteen years. In that respect, TCO can rely on the void easements as "color of title" even though the surface owners had no authority to grant the easements and TCO could have ascertained that fact by a proper search of the surface owners' chains of title. *McDaniel v. Ramsey's Adm'rs*, 305 Ky. 536, 204 S.W.2d 953 (1947); *Shively v. Elkhorn Coal Corp.*, 217 Ky. 192, 289 S.W. 262 (1926); *Shutt v. Methodist Episcopal Church*, 187 Ky. 350, 218 S.W. 1020 (1920).

Having concluded that TCO's claim is not precluded by the provisions of KRS 381.430, we reverse the judgment of the Floyd Circuit Court and the decision of the Court of Appeals and remand this case to the Floyd Circuit Court with directions to address the merits of TCO's prescriptive easement claim and to enter judgment accordingly.

GRAVES, JOHNSTONE, KELLER, STUMBO, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the circuit court and the Court of Appeals had correctly determined that factually TCO had not acquired a prescriptive easement over the property in question. The trial judge was correct in finding that KRS 381.430 precluded TCO from acquiring prescriptive easements across the two tracts in question, even though it had used the property for its pipeline for more than forty years. The statute provides that if mineral or other interests in or rights appurtenant to land are severed from the surface of the property, the surface owners or those claiming through them are deemed to be statutory trustees for the benefit of the owners of the severed minerals. Consequently, the surface owners or those claiming through them may not adversely possess any interest in the property unless and until the statutory trust is unequivocally repudiated and the statutory requirements for adverse possession are satisfied. *See* KRS 413.010; *Great Western Land Management, Inc. v. Slusher*, Ky., 939 S.W.2d 865 (1997).

I must agree with the Court of Appeals when it concluded that by virtue of its claim through the surface owners, TCO's use of the property was for the benefit of any parties such as Consol to whom an interest in the property, consisting of the exclusive power to convey future right of way easements, had passed. Therefore, it was not until the trust was repudiated by TCO in 1991, that possession of the property became hostile to the rights of Consol. Thus TCO did not meet the 15 year statutory requirement for adverse possession and it did not acquire prescriptive easements across the real property. TCO should bear the costs of moving the pipeline to another location because it never acquired any valid right to locate its pipeline across the two tracts in question.

I would affirm the decision of the Court of Appeals and the judgment of the circuit court.

LAMBERT, C.J., joins this dissenting opinion.