## City of Harrodsburg v. Cunningham et al.

Nov. 21, 1944.

194

W. H. Phillips and C. E. Rankin for appellant.

Chas. Matherly for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

For many years the citizens of Harrodsburg have obtained water from a municipally owned and operated plant which consists of a dam across Salt river, which creates a reservoir for the storage of water, a filtration plant, a standpipe and lines of pipe through which water is transported and delivered to the consumers. The water impounded in the reservoir by the present dam across Salt river proved to be insufficient to meet the needs of the patrons of the city water plant, and on September 20, 1944, the city purchased from John P. Williams a small tract of land located on Salt river above the present city reservoir with the intention of constructing a second dam across the river and creating a second reservoir. The deed from Williams to the City of Harrodsburg conveyed to the city, among other rights, the "right of John P. Williams to erect and perpetually maintain in Salt River, in connection with said property, a dam, the spillway floor of which is approximately 829 feet above sea level, with the power and right, as an incident thereto, to submerge so much of the land on either side of the river up-stream from said dam to the end of the pool or reservoir, as would be submerged by the erection and maintenance, of such a dam." The right re-

ferred to in the deed was a right acquired by prescription to maintain a dam across Salt river.

Some time prior to September 9, 1854, Daniel Cozatt, then owner of the land, constructed a dam, the top of which was 829 feet above sea level and which formed a pool 9 feet deep at the dam, extending upstream 1.5 miles. Some of the land of the abutting owners along the river was submerged. The purpose of the dam was to provide power to operate a grist mill. On September 9, 1854, Daniel Cozatt conveyed the land on which the dam had been constructed to William T. Williams, father of John P. Williams, who inherited it upon his father's death. The dam was continuously maintained until January, 1926, when John P. Williams had it removed or such portion of it as interfered with the flow of the water. At that time the grist mill was in a dilapidated condition and had not been operated for many years. Forrest Cunningham and Irene Cunningham, his wife, own a tract of land upstream from the site of the old dam, some of which will be submerged if the proposed dam is constructed. An interest in this land was inherited by Forrest Cunningham from his mother, and the remainder was conveyed by the other heirs to Forrest Cunningham and Irene Cunningham in May, 1943. On September 21, 1944, the day after the deed from John P. Williams to the City of Harrodsburg was executed, the city brought this declaratory judgment action against Forrest Cunningham and Irene Cunningham to have the rights of the parties declared. The petition states the controversy as follows: "An actual controversy in good faith exists between plaintiff and the defendants, in this that the plaintiff contends that it is the owner of all the rights formerly owned by John P. Williams and his predecessors in title, while the defendants contend that the plaintiff has no right to construct or maintain such a dam and no right to cover or submerge any of their land." It is conceded that John P. Williams and his predecessors in title had acquired by prescription the right to submerge the land by the maintenance of the dam and that this right existed at the time Williams removed the dam in 1926. Williams' deposition was taken, and when asked why he tore down the dam answered: "For two reasons—it overflowed this land along the river bank; part of the dam was made of wood and after it rotted and washed away the current came round under the dam and damaged the foundation of the mill."

He stated that he had no intention of rebuilding the dam. The chancellor adjudged that the prescriptive right to maintain the dam and to submerge the defendants' land had been lost by abandonment, and the city has appealed.

In a well-considered and exhaustive opinion, the chancellor, Hon. K. S. Alcorn, stated his reasons in support of the judgment. We concur in the views expressed by him and adopt the following from his written opinion, which has been made part of the record:

"With the consent of all parties, the court viewed the site of dam. The mill is in a state of dilapidation. Williams said it had not been run in 30 years, and it has that appearance. The opening torn in the walls of the dam is so wide that the flow of the stream is not seriously interfered with. The conveyance from Williams to plaintiff, under which the latter is asserting it was vested with the right to build and maintain a dam, as successor to Williams, was executed September 20, 1944. It should be added that the right of Williams and the previous owners to this easement of the dam with its incidents was obtained by prescription.

"In my opinion, at the time Williams made this conveyance he had lost the right to this easement, by reason of having abandoned it, and, consequently, plaintiff did not acquire any such right.

"It is well settled, in this jurisdiction and generally, that an easement may be lost by abandonment. A review of some of the authorities will make that clear. The authorities take pains to mark the distinction between mere non-user, with nothing more, and non-user attended by circumstances showing clearly the intention of abandonment of the easement.

"Curran v. City of Louisville, 83 Ky. 628, involved the question of whether an easement, held by grant, had been lost by abandonment. In discussing the proposition presented, the Court said:

" 'The language of some cases seems to imply that the mere non-user of an easement, which has been acquired by prescription or adverse use, for a sufficient length of time, is of itself an abandonment; but more correctly, it is nothing more than evidence of an intention to abandon the right.'

"The Court proceeds:

" 'Where, however, an easement has been acquired by grant or its equivalent, no length of mere non-user will defeat the right. To do so there must be an adverse use by the servient estate for a period sufficient to create a prescriptive right. * * *

" 'The right to the use in such a case is not extinguished by mere disuse. There must be something more than this. There must be some act upon the part of the owner of the land or the servient estate inconsistent with the existence of the easement or dominant estate.'

"The opinion recognized the distinction, so far as mere non-user is concerned, between easements of grant and those of prescription. As to the former, non-user, no matter how long continued, is not enough to forfeit the easement. There must be adversary use for the prescriptive period to bring about the loss. But as to easements by prescription, non-user is to be regarded for the evidence it may furnish of abandonment. This is a distinction generally made, as will appear from the authorities cited below from other jurisdictions, and from the texts.

"But whether the easement be held under grant or prescription it may be lost by abandonment. The court in the Curran case on this said:

" 'The question next arises whether the acts of the city show an abandonment of the right it acquired by the condemnation. To have this effect they must be of a conclusive character, and clearly established by the evidence. They must show an intention to abandon the intended use.'

"In Johnson v. Clark, 57 S. W. 474 (475), 22 Ky. Law Rep. 418, the question before the court was whether a passway held by conveyance had been lost by non-use and adverse use on the part of the servient estate. The court quotes with approval from the Curran opinion the statement that simple non-user of a granted easement will not forfeit it; there must have been prescriptive adverse use in order to bring about the loss of it. On the question of whether there had been abandonment of the easement, the court, in discussing it, quoted from Jones on Easements, sec. 863, as follows:

" 'Mere nonuser of an easement created by deed, however long continued, does not create an abandon-

ment. This occurs only where in connection with non-user there is a denial of title, or some act by an adverse party, or *attendant facts and circumstances showing an intention on the part of the owner of the easement to abandon it.* It is not the duration of the cesser to use the easement, but the nature of the act done by the owner of the easement, or the adverse act acquiesced in by him, and the intention which the one or the other indicates, that is material.' (Emphasis supplied.)

"In 17 Am. Jur. p. 1026, sec. 142, the text states that an easement created by grant or deed may be extinguished by abandonment, and adds:

" 'An easement may be abandoned in whole or in part and either by unequivocal acts showing a clear intention to abandon and terminate the right or by acts in pais without deed or other writing. The intention to abandon is the material question and may be proved by an infinite variety of acts. It is a question of fact to be ascertained from all the circumstances of the case.'

"Again, on page 1029, sec. 144, with reference to non-user of such an easement:

" 'Nonuser of an easement created by grant does not, of itself, constitute an abandonment thereof. This rule is based upon the principle that such an easement is an interest in land and the only failure to enjoy it which will operate to extinguish the easement is that which is due to adverse occupancy. In order that a nonuser may constitute an abandonment, there must be an intention to abandon. However, nonuser may be continued unexplained for such a length of time as to be inconsistent with any hypothesis other than an intention to abandon the easement.'

"This principle was recognized and applied in Mammoth Cave Nat. Park Ass'n v. State Highway Comm., 261 Ky. 769, 88 S. W. 2d 931 (934) where the Court declared:

" 'Forfeiture of easements like other forfeitures are not favored by courts, and mere nonuse or temporary suspension of use without adverse possession is not alone sufficient to establish abandonment (citing cases). While long-continued nonuser or suspension of use are not of themselves conclusive evidence, they are factors to be considered when coupled with other acts evidencing

the intention to abandon, in determining whether an easement has been relinquished (citing cases).'

"Then the opinion quotes from 9 R. C. L. 813, sec. 69, as follows:

" 'Abandonment of an easement will be presumed when the owner of the right does, or permits to be done, any act inconsistent with its future enjoyment.'

"The principle with regard to nonuser and abandonment of an easement and the distinction taken between a granted and prescriptive easement in those respects treated of in the foregoing authorities, has been expressed and applied in many cases other than those cited. It would make this opinion too long specifically to refer to them. Many are collated in the annotations in 98 A. L. R., beginning on page 1291, with prior decisions in the annotations in 66 A. L. R. 1100 and 1 A. L. R. 884.

"As already observed, after Williams partly demolished the dam in 1926, it was never again used, nor any other raised in its place. Not since that date have the waters been impounded. It is not without significance that the mill had not been operated for some years before 1926, and never afterwards. Nothing was said or done by Williams from 1926 to indicate he intended at any future time to rebuild or repair this dam or impound these waters. This conduct of his, taken in connection with the number of years, 18, that elapsed since the dam was thrown open by him, seems to me to be consistent only with abandonment. As has already been shown, when it comes to determining whether there has been an abandonment, be the easement one of grant or prescription, as this one, the vital question is, was there an intention on the part of the owner to abandon it, and that is to be ascertained from all the attendant facts and circumstances. Furthermore, when the easement is a prescriptive one, long continued nonuser of it raises the presumption of abandonment. Now here we have an act done 18 years ago by the owner of the easement that was destructive of its use, and nothing done since then to make it possible to use it. So it is a case of nonuser for 18 years, longer, it may be remarked, than the prescriptive period in this jurisdiction, but of non-use resulting from the deliberate act of the owner to put the easement out of use. Certainly non-use for this length of time, and resulting from such act on the part of the owner, should raise a strong presumption of abandon-

ment. What is there to rebut the presumption? Nothing. There is no testimony tending in the slightest to overcome that presumption. Indeed, Williams himself testified that when he wrecked the dam, it was with the intention to wreck it permanently, and never rebuild or repair, or to again impound the waters. And there is no evidence that he ever changed his mind, if that under the circumstances could be of any relevance. It was intimated in argument that his conveyance to plaintiff shows he must have been claiming the easement, that it was inconsistent with his having abandoned it. But, if he had then lost the easement by reason of his having abandoned it, he could not repossess himself when he executed the deed. As the cited authorities demonstrate, cesser of use of the easement, coupled with conduct clearly showing the intention to abandon it, is just as effective, so far as divesting title is concerned, as a duly executed release, and without regard to the time that may have elapsed. But in this case we have cesser of use with conduct clearly showing the intention to abandon the easement which had existed for 18 years at the time of this conveyance to the plaintiff. And the latter knew at the time of its purchase and of this deed that Williams had wrecked the dam eighteen years before and had never made use of the easement after that. There was no testimony as to this, but I construe the point as conceded in the pleadings. Consequently, not only was Williams, by reason of this abandonment not possessed of any right of easement he could convey plaintiff, but presumptively plaintiff was aware of his having forfeited it at the time of the purchase from him. It seems to me this case in this respect is governed by the principle stated in 67 C. J., page 720, where the text, after stating a grant of a mill and dam will pass as appurtenant to a right of flowage, unless excepted, makes the qualification that 'the rule has no application where there is no visible, actual and existing appurtenance at the time of the conveyance,' citing McMillian v. Etter, 229 Mich. 366, 201 N. W. 499, where the dam and the flume were gone, the pond had disappeared, the waters above were back to their normal level, and the mill building was dismantled and abandoned.''

There is a sound basis for the distinction that is made by the courts between easements by grant and easements by prescription in so far as loss of the easement by nonuser is concerned. A purchaser of the servient

estate has constructive notice of a granted easement, whereas there is usually nothing to bring to his attention the existence of an easement by prescription which has not been used for a long period of time by the owner of the dominant estate. That an easement may be lost by nonuser, coupled with other acts evidencing an intention to abandon, is recognized in Schade v. Simpson, 295 Ky. 45, 173 S. W. 2d 801, Jennings v. Dunn, 252 Ky. 740, 68 S. W. 2d 13, and other cases cited therein. In 28 C. J. S., Easements, sec. 60, it is said: "Mere nonuser of an easement does not raise a presumption of abandonment, especially where it is not continuous for the time required for perfection of an easement by prescription. Abandonment occurs, however, when nonuser is accompanied by acts clearly evidencing an intention to abandon." This seems to be the rule generally followed in this and other jurisdictions.

The judgment is affirmed.