## Cyrus et al. v. Lovejoy.

June 19, 1945.

P. H. Vincent for appellants.

W. D. O'Neal for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Appellee, Neel B. Lovejoy, and appellant, Arthur Cyrus, own adjoining tracts of land. The Cyrus land is located between appellee's land and the county road. The appellee brought this action against Arthur Cyrus and his wife, Goldie Cyrus, to have located through the Cyrus land a passway 16 feet wide in accordance with the terms of the deed to appellee and the deeds to her predecessors in title. The chancellor granted the relief sought in the petition, and the defendants have appealed.

Prior to 1908 the two tracts of land were parts of the same tract and were owned by Lucinda E. Sisson. On December 29, 1908, Lucinda E. Sisson sold and conveyed to Cora Damron the tract now owned by appellee, which adjoins and lies back of the land now owned by Arthur Cyrus. The deed from Lucinda E. Sisson to Cora Damron contained this provision: "It is further understood that the party of the second part and her assigns are to have a 16 foot road or pass way from said land down the branch to the County Road, there is to be a gate at the outlet of said road kept up by both parties and the gate at the other end of the road is to be kept up by both parties." The Damron tract has been conveyed several times since 1908, and in each deed, including the one from H. W. Collier to appellant, dated January 11, 1943, the passway described in the Sisson deed was conveyed. It seems that some time subsequent to 1908, James Sisson and James Damron, husbands of the owners of the respective tracts, agreed orally to construct a bridge across the branch at a point 165 feet from the county road, and that Mrs. Damron should have the right to pass from that point through the Sisson barn lot, a distance of 215 feet to the county road. A gate was erected near the bridge at the entrance to the barn lot, making three gates on the passway instead of two. The Damrons and the suc-

cessive owners of the dominant estate continued to travel through the barn lot until this action was instituted.

Appellee in her petition alleged that "the defendants in violation of her rights in said easement, has said roadway as now located running through the defendant's barn lot where he keeps a large number of cows and a cross bull, and necessitating plaintiff to go through an extra gate, in all three gates. Plaintiff states that said barn lot is at times filthy and nasty for plantiff's said use, and especially so for persons on foot, and especially so for the use of school children who reside on plaintiff's land as tenants. Plaintiff states that the present location of said easement over the defendant's lands and especially that part passing through defendant's barn lot is an improper location and not within the rights of plaintiff as contemplated in the easement granted to her and her predecessors owning said land. That it was the intention of the grantors and each of the former owners of said land and the original grantor providing for said roadway or easement that there should be only two gates, one at the farm line and one at the county road and that there should be no other obstructions to said roadway, and that it was not contemplated that said roadway should be changed arbitrarily compelling the one entitled to said easement to go through a barn lot where many cattle are kept and through an extra gate."

The weight of the evidence sustains appellee's claim that the road through the barn lot has become impractical. There is a steep grade at the entrance to the lot, both from the county road and from the bridge on the opposite side, while the passway along the branch from the bridge to the county road, described in the Sisson and succeeding deeds, is on level ground. Arthur Cyrus operates a dairy, and each night 22 cows are confined in the barn lot. During the winter season and wet weather, the road is frequently impassable for automobiles. John Rakes, a tenant on appellee's land, was compelled to erect a garage on the county road on a neighbor's land where he leaves his automobile and from there walks to his home, a distance of ¾ of a mile. The agreement between James Sisson and James Damron was clearly made for the convenience of the owner of the servient estate, and the evidence is insufficient to show that it was intended at that time to be anything more than a tem-

porary arrangement to last as long as it was mutually satisfactory. At the time the agreement was made, automobiles had not come into common use. Recently appellant, Arthur Cyrus, has changed the nature of the use of the barn lot, and has rendered it not only inconvenient as a location for a roadway but has made the road heretofore used impassable for automobiles much of the time.

Appellants cite City of Harrodsburg v. Cunningham, 299 Ky. 193, 184 S. W. 2d 357, in support of their contention that the easement granted by the Sisson deed has been abandoned, but there is no such evidence of intention on the part of the owner to abandon the easement as appeared in the City of Harrodsburg case. There the easement was one by prescription, and the distinction between easements by grant and those by prescription, so far as the loss of the easement by nonuser is concerned, was pointed out.

The chancellor adjudged the correct location of the passway to be along the branch to the county road, as fixed in the deed from Lucinda E. Sisson to Cora Damron, and we think correctly so.

Judgment affirmed.