## Jones v. Dunn.

October 14, 1947.

Ira D. Smith, Special Judge.

Prince & Acree, Roy N. Vance, Jr., and Holland G. Bryan for appellant.

Lovett & Lovett for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

H. W. Jones, the appellant, filed a petition seeking a mandatory injunction to require Joe Dunn, the appel-

lee, to remove obstructions from a roadway and also seeking $500 damage resulting from these obstructions. The chancellor having dismissed the petition, Jones now appeals.

The contention made upon this appeal is that the chancellor's judgment must be reversed because it is contrary to the preponderance of all the evidence bearing on the question of whether Jones' farm now has a prescriptive easement roadway, which should be kept free of all obstructions, running northward across Dunn's farm.

The farm of Jones, which he rents to his tenants, and the farm of Dunn, upon which he lives, are adjoining properties in the southern part of Marshall County. They lie just to the south of State Highway 98 and just to the east of State Highway 299. They both have undisputed roadway outlets over a third thoroughfare known as the Mayfield-Wadesboro Road, which bounds the Dunn farm on the southward side and which runs relatively close to the Jones farm on the same side. The Jones farm is connected with the Mayfield-Wadesboro Road by an established, private passway running southwardly from the Jones tenant house a distance of a few hundred feet over to this Mayfield-Wadesboro Road. But besides the roadway access Jones now has southwardly to the Mayfield-Wadesboro Road, he also wants additional roadway access northwardly to State Highway 98, and he contends that he is entitled to the latter by reason of an easement over the Dunn farm he obtained and now owns by prescription. The ordinary objectives of either the established roadway toward the South or of the controversial roadway toward the north appear to be those of (1) the store and school center at the junction of State Highway 299 with State Highway 98 and (2) the county seat center at Benton. The distances from the Jones tenant house to these two objectives appear to be approximately the same over the established roadway to the south and over the controversial roadway to the north.

Before rendering judgment in this case the chancellor went upon these farms, looked this situation squarely in the face, walked into the thick smoke of this controversy as it arose directly from the field of legal battle.

The issue of this case was not whether the Jones farm had once enjoyed a northward outlet by prescriptive easement. It was generally agreed that it had. But the issue was whether this northward outlet by prescriptive easement had been subsequently lost to the Jones farm by its complete disuse and adverse possession extending over a period of 15 years or more. On this question, Jones seems to have presented the evidence of nine witnesses besides himself, while Dunn seems to have presented the evidence of thirty witnesses besides himself. Several of the witnesses were friends and neighbors to both Jones and Dunn. While Jones and some of his witnesses tended to show that the northward roadway still exists and that it had never fallen into a total disuse, yet, on the other hand, we find that several witnesses testified that this northward roadway over the Dunn farm had been unused, fenced up, grown over and entirely discontinued as a travel route over a period of 15 years or more. Thus, we may properly observe that this was a case of sharply conflicting evidence, yet one having a quantitative preponderance in favor of appellee.

We believe that the law has been established that an easement acquired by prescription may be extinguished by a non-user under circumstances indicating an intention of abandonment whenever such non-user has extended over that period of time sufficient to have created the prescriptive right at its origin. See Childers v. Burger, 231 Ky. 508, 21 S. W. 2d 805; City of Harrodsburg v. Cunningham, 299 Ky. 193, 184 S. W. 2d 357.

It has apparently been likewise established that the essential elements of such an adverse possession as would extinguish an easement are similar to those necessary for its original emergence as a legal right under prescriptive process at its creation. In other words, it seems that the death agony of any prescriptive easement is just about like the labor pain that accompanies its birth. See Childers v. Burger, supra, and 9 R. C. L. 812.

We hardly deem it necessary to call attention of appellant's able counsel to our hoary-headed rule of upholding the chancellor's findings of fact where such findings are based upon conflicting evidence. See multi-

tudinous cases cited in 2 Kentucky Digest, Appeal and Error, Key 1009. The evidence in this case relating to the time and character of the disuse of appellant's northward outlet as a roadway was certainly conflicting but it was just as certainly preponderant, in quantity at least, on appellee's side of the issue at stake. The chancellor visited these farms weighed this evidence, measured motives and reached a conclusion. Therefore, under all these circumstances, we do not feel that we can conscientiously disturb it.

Wherefore, the judgment is affirmed.