RENDERED: APRIL 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1538 -MR

ARLENE RAMSEY                                                    APPELLANT

APPEAL FROM BRECKINRIDGE CIRCUIT COURT
v.         HONORABLE BRUCE T. BUTLER, JUDGE
ACTION NO. 17-CI-00095

DONALD G. KEESEE; IVAN N.
BENNETT, JR.; AND PATRICIA F.
KEESEE                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, KRAMER, AND TAYLOR, JUDGES.

ACREE, JUDGE: Appellant, Arlene Ramsey, appeals the Breckinridge Circuit

Court's November 28, 2018 Findings of Fact, Conclusions of Law, and Judgment

concluding appellees, Donald G. Keesee, Patricia F. Keesee, (the "Keesees"), and

Ivan N. Bennett, Jr. (collectively, "the appellees"), acquired a prescriptive

easement in a road located on the easternmost boundary of her property. Ramsey also appeals from the circuit court's September 11, 2019 Findings of Fact, Conclusions of Law, and Judgment defining the location, permitted uses, and termination point of the easement. Upon careful consideration, we affirm.

## BACKGROUND

Ramsey owns approximately 145.226 acres of rural farmland in Breckinridge County, Kentucky. She acquired the farm in 2004 upon the death of her husband, Charles Ramsey, who inherited it from his parents in 1976. Since 1976 the property has been used primarily to raise cattle and crops.

The appellees own nearly all the property adjacent to Ramsey's eastern boundary line.[1] Originally, all the appellees' properties were part of one large farm owned by Owen and Veteur Bennett. In 1975 the Keesees purchased 21.33 acres of the Owen and Veteur Bennett farm. This tract of land begins at the northeast corner of Ramsey's property and runs south, along its eastern boundary.

In 2006, Ivan N. Bennett, Jr., the grandson of Owen and Veteur Bennett, purchased 15.939 acres of the Owen and Veteur Bennett farm.[2] This tract borders the southern boundary of the Keesees' 21.33-acre tract and continues south, along the eastern boundary of the Ramsey farm.

---

[1] For visual reference, see Ramsey's Exhibit 5. (Record ("R.") at 287).

[2] Tract 4 on Ramsey's Exhibit 5.

In 2016 the Keesees purchased an additional 13.537 acres[3] from Darlene Bennett, the daughter-in-law of Owen and Veteur Bennett. This tract borders the southern boundary of Ivan N. Bennett, Jr.'s tract and continues south, along the eastern boundary of Ramsey's property. Taken together, the property owned by the appellees extends nearly the entire eastern boundary of Ramsey's farm.

The dispute in this case concerns the use of a road ("the road") that runs along the entirety of Ramsey's eastern boundary. The road connects at its southern point to a county road – Pile Ford Road – which runs directly into Kentucky Highway 401. The road lies entirely on Ramsey's property but is bordered to the east by the appellees.

In 2017, Donald Keesee began maintenance on the road without Ramsey's consent. In response, Ramsey erected a gate across the southern point of the road and placed a lock on it to prevent anyone who did not have a key from using the road. The appellees sued Ramsey, seeking an order directing her to remove the lock from the gate to allow the unobstructed use of the road. Ramsey answered the complaint and filed a counterclaim against the Keesees seeking compensatory and punitive damages, and attorney's fees.

---

[3] Tract 5 on Ramsey's Exhibit 5.

The parties waived trial by jury, and the case was tried before the circuit bench. At the close of evidence, the only issue remaining for the judge to decide was whether the appellees had acquired a prescriptive easement. The circuit court found:

> (9) Mr. Keesee has used the road as a way of accessing Kentucky Highway 401 from the 21.33 acres he and his wife purchased in 1975. Until he purchased an additional tract of property in 2016 he had never been told he could not use the road and in fact he had never asked if he could use the road. He used the road by using his ATV or a truck. Donald Keesee has used the road an average of two or three times a week since 1975.
>
> . . . .
>
> (12) Ivan N. Bennett, Jr. and his mother and father have used the road for many years to access the property owned by the Keesees at the northern end of the road and also to access property that Ivan N. Bennett, Jr. purchased from his grandmother in 2006. He and his mother and father used the road with a truck to access the property owned by Keesee at the northern end of the property for camping purposes. They used the road to haul out firewood and generally for access to Highway 401. This use spans at least forty (40) years.
>
> (13) The road has been fenced on both sides most of its existence. . . . there had been an opening placed on the east fence to allow access to the road from the property owned by the Bennetts and Keesees on the east side of the road. The purpose was to move grain and farm products by accessing Kentucky Highway 401.
>
> . . . .

-4-

(16) The Bennetts and Keesees never asked for permission to use the road. They always used it openly and without interference until [Ramsey] had a gate placed across the road with a lock after Donald Keesee purchased some property in 2016.

Based in part on these findings, the circuit court determined the appellees "and their predecessors in title acquired a prescriptive easement over the road by actual, hostile, open and notorious, exclusive and continuous possession of the road for the statutory period of fifteen (15) years."

Ramsey filed a motion pursuant to CR[4] 59.05 asking the circuit court to clarify the location and permitted uses of the prescriptive easement. After hearing the issues and making factual findings, the circuit court concluded "the road bed shall be twelve (12) feet wide and the easement containing the road bed shall be thirty (30) feet wide." It further concluded the appellees have the right to use the road for purposes of ingress and egress for agricultural and recreational purposes and to maintain the road in a reasonable manner. This appeal followed.

## STANDARD OF REVIEW

When a circuit court holds a bench trial and serves as the finder of fact, those findings of fact shall not be set aside unless clearly erroneous. CR 52.01; *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky.

---

[4] Kentucky Rules of Civil Procedure.

-5-

1998). Findings of fact are clearly erroneous if they are not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336 (Ky. 2003). Evidence is substantial if, "when taken alone, or in the light of all the evidence, it has sufficient probative value to induce conviction in the minds of reasonable [people]." *Janakakis-Kostun v. Janakakis*, 6 S.W.3d 843, 852 (Ky. App. 1999).

Due regard must be given to the circuit judge's opportunity to consider the credibility of the witnesses. CR. 52.01; *Cherry v. Cherry*, 634 S.W.2d 423 (Ky. 1982). Even if this Court would have reached a contrary conclusion, we will not disturb the circuit court's findings that are supported by substantial evidence. The circuit court's conclusions of law are subject to an independent *de novo* review. *Gosney v. Glenn*, 163 S.W.3d 894 (Ky. App. 2005).

## ANALYSIS

"Generally, an easement may be created by express written grant, implication, prescription or estoppel." *Gosney*, 163 S.W.3d at 899. The law governing prescriptive easements is derived from the principles underlying adverse possession. "As with adverse possession of a fee simple estate, a prescriptive easement can be acquired by actual, hostile, open and notorious, exclusive, and continuous possession of the property for the statutory period of fifteen years." *Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.*, 15 S.W.3d 727, 730 (Ky. 2000).

On appeal, Ramsey asserts: (1) the Keesees' use of the road was not open and notorious; (2) Ivan N. Bennett, Jr.'s use of the road was not hostile; (3) the circuit court erred by not properly limiting the prescriptive easement to the use and location established during the prescriptive period; and (4) any easement over the portion of the road north of the "Tate House"[5] was abandoned. We limit our discussion to these specific contentions.

***Substantial evidence supports the finding that Donald Keesee's use of the road was open and notorious.***

"The 'open and notorious' element requires that the possessor openly evince a purpose to hold dominion over the property with such hostility that will give the nonpossessory owner notice of the adverse claim." *Appalachian Reg'l Healthcare, Inc. v. Royal Crown Bottling Co.*, 824 S.W.2d 878, 880 (Ky. 1992). Such possession must be "conspicuous and not secret, so that the legal title holder has notice of the adverse use." *Id.* (citing *Sweeten v. Sartin*, 256 S.W.2d 524, 526 (Ky. 1953)). The purpose of this requirement is simple – "to give the owner of the servient estate ample opportunity to protect against the establishment of prescriptive rights." *Ellington v. Becraft*, 534 S.W.3d 785, 795 (Ky. 2017).

---

[5] The "Tate House" sits approximately halfway along the road, where the southwestern corner of Ivan N. Bennett, Jr.'s property (Tract 4) connects with the northwest corner of the Keesees' 13.537 acre tract (Tract 5). The road north of the "Tate House" is a wooded area overgrown with trees and vegetation.

Ramsey does not live on the farm and claims she never saw Donald Keesee use the road until he purchased the second tract of land in 2016. She contends that Donald Keesee's use of the road two or three times per week did not constitute "open and notorious" possession because it was insufficient to put her on notice that he was using the road. Specifically, she claims that his use of the road would leave no physical evidence to put her on notice of his use of the road, especially given the fact that other people used the road with her permission. And, that she "should not have to get on her hands and knees and review tire tracks to determine if they are from an adverse user or someone allowed to be on the property."

Kentucky jurisprudence is clear that "[i]t is the legal owner's knowledge, either actual *or imputable*, of another's possession of lands that affects the ownership." *Appalachian Reg'l Healthcare*, 824 S.W.2d at 880 (emphasis added). As clearly stated by our Supreme Court:

> To start the running of the statute of limitations, the disseizor must have an actual possession; it must be an open, notorious, and visible possession; it must be a selfish or exclusive possession, that is the disseizor must hold possession for himself to the exclusion of the true owner, and all others; it must be a hostile possession, not only as against the true owner but as against the world; it must be a definite possession, that is its confines must be marked by an inclosure or other plainly visible indications; the disseizor must fly his flag, and indicate the lines of his dominion, the extent of his possession must be evident; and it must be a possession under a claim by the disseizor

of ownership in himself, *so notorious as to amount to a constructive notice of its adverseness.*  When all these things coexist, the running of the statute starts.  To keep it running the disseizor must in this commonwealth maintain that status in full vigor in all its elements for every hour of every day for 15 years . . . .

*Moore v. Stills*, 307 S.W.3d 71, 77 (Ky. 2010) (emphasis added) (citation omitted).

Accordingly, it is not necessary that an adverse possessor's use put the legal title holder on actual notice.  Instead, it is sufficient if the adverse possessor's use is of such a conspicuous nature that it would put the legal title holder on constructive notice of the adverse use, assuming the legal title holder exercises ordinary care in looking after the estate.  *McCoy v. Thompson*, 172 Ky. 794, 189 S.W. 1139, 1141 (1916) ("to constitute adverse possession there must be such open and notorious acts of physical possession *as would put the owner of the land--assuming him to be a person of ordinary prudence and diligence in looking after his estate--upon notice* that a hostile claim was asserted to his property." (emphasis added)).

With this standard in mind, we now turn to whether Donald Keesee's use was sufficient to put Ramsey on constructive notice.  We note, it is "the character of the property, its physical nature and the use to which it has been put, [that] determines the character of acts necessary to put the true owner on notice that a hostile claim is being asserted."  *Ely v. Fuson*, 297 Ky. 325, 180 S.W.2d 90,

-9-

92 (1944). Whether an adverse possessor's use is "open and notorious" is a finding of fact for the judge to determine based on the evidence presented at trial.

The circuit court found that the road has been fenced on both sides with an opening along the east fence to provide access to the road from property owned by the appellees. Donald Keesee testified he has used the road two or three times per week since purchasing his 21.33 acre parcel of property in 1975. He noted that he traveled the road by ATV or truck to access Kentucky Highway 401 and to check on his cattle.

Penny Willis and her husband David Willis testified at trial. They own property that borders Ramsey to the south, directly off Pile Ford Road and have lived there for over twenty years. Penny Willis testified that she saw Donald Keesee using the road by truck or ATV three to four times in total prior to 2016, but more often after purchasing the additional 13.537 acres. David Willis testified that he would see Donald Keesee "every once and awhile" prior to 2016 and more often thereafter. However, both noted that due to their work schedules, they were not home during most of the day and would not be in a position to see him as often as he claims.

Given the nature of the land and its normal uses – an unimproved farm road that has been used to access the highway and move cattle and crops – we believe Donald Keesee's use of the road to access Kentucky Highway 401 and

check livestock are clear examples of his customary use of the road. In addition, his use of the road two or three times per week since 1975 was "open and notorious" in the sense that it was sufficient to put Ramsey on constructive notice of his use. Accordingly, substantial evidence supports the circuit court's finding that the Keesees' possession was open and notorious.

Ramsey further argues that the lack of an "open and notorious" use by Donald Keesee was particularly true of the road north of the "Tate House." There was testimony that this section of the road could not be traveled by vehicle due to its overgrowth of vegetation and trees. Although we concede this section of the road was far less traveled, Donald Keesee testified that he still traveled the wooded area "maybe once every two weeks" by way of ATV.

We acknowledge that the circuit court could have given more detail in its discussion relating to use of the road north of the "Tate House." However, the court heard testimony and reviewed pictures of this section of the road and still found that Donald Keesee's use of the road was open and notorious. Given Donald Keesee's testimony, we conclude that the circuit court's finding is supported by substantial evidence.

***Substantial evidence supports the finding that Ivan N. Bennett, Jr.'s use of the road was not permissive.***

Ramsey next attacks Ivan N. Bennett, Jr.'s use of the road, contending it was permissive and, therefore, not hostile. "To say that possession is hostile

should mean nothing more than that it is without permission of the one legally empowered to give possession, usually the owner." *Henninger v. Brewster*, 357 S.W.3d 920, 927 (Ky. App. 2012) (citation omitted). Substantial evidence supports the circuit court's finding that Ivan N. Bennett, Jr. and his predecessors in titles' use was hostile.

Darlene Bennett, the mother of Ivan N. Bennett, Jr., testified that prior to 1991,[6] she and her husband would use the road to go camping with their son, Ivan Bennett, Jr., and to cut firewood, which her husband would sell. She noted that they would use the road to access a camping spot they had cleared on the Keesees' land and to cut wood from both her father-in-law's property and the Keesees' property. When asked if permission was ever given to use the road, she testified, "no, because I didn't have to . . . at that time, it was a county road."[7] She noted that no one ever questioned their use of the road. When asked about the use of the property by Owen and Veteur Bennett, Ivan N. Bennett, Jr.'s predecessors in title, she testified that Owen Bennett would use the road by way of tractor and to check on his cattle.

---

[6] Darlene and her husband, Ivan Bennett, Sr. moved to Breckinridge County in 1991. Prior to that, she lived in Louisville with her husband and Ivan N. Bennett, Jr.

[7] The road at issue was never a county road.

On cross-examination, Darlene Bennett was asked whether the use of Ramsey's land to hunt and fish was permissive. She testified, "[Ivan Bennett, Sr.] did not ask permission, [Ramsey] just gave him permission. She told him he could go and do anything he wanted over there."

Ivan N. Bennett, Jr. also testified about his use of the road. He stated that prior to 1991, he was at his grandfather's property about every weekend. He traveled the road by ATV or truck and was "all over the woods." When asked if he ever asked Ramsey for permission, he stated no. He also testified that he was never stopped from using the road until Ramsey erected the fence.

He further testified that his grandparents and parents always referred to the road at issue as an "old county road." He stated he always believed the road at issue was "an old county road" and you "don't need to ask permission to use a county road." On cross-examination, he did acknowledge that he had permission to hunt and fish on Ramsey's property.

Ramsey's argument revolves around Darlene and Ivan N. Bennett, Jr.'s admission that they had permission to hunt and fish on her property. Although it is true that Ivan N. Bennett, Jr. and his predecessors may have been given permission to hunt and fish on Ramsey's property, these statements do not infer consent to use the road at issue. In fact, both parties specifically testified that they did not ask to use the road. Additionally, Ivan N. Bennett, Jr. noted he did not

believe Ramsey even owned the road, because he and his predecessors always believe it to be a county road. This would support testimony that permission to use the road was never sought or given.

Ramsey further contends that even if permission was not explicit, it was implicitly given. She claims she maintained gates across the road, which is indicative of permissive use. *Smith v. Oliver*, 189 Ky. 214, 224 S.W. 683, 685 (1920). Although the maintenance of gates carries evidentiary value in support of permissive use of a road, it is not conclusive. *Ward v. Stewart*, 435 S.W.2d 73, 75 (Ky. 1968).

Here, the circuit court found:

(13) The road has been fenced on both sides most of its existence. [Ramsey's] husband used the road to move his cattle up and down his farm which he owned and which she now owns which lies on the west side of the road. Occasionally, there would be a temporary fence or gate placed across the road to facilitate the moving of cattle. . . .

(15) There was some testimony that was conflicting regarding the number and placement of gates on the road that is now called Pile Ford Road. It appears to the Court that before Pile Ford Road was adopted into the county road system there were various gates at various locations on the Pile Ford Road, with the last gate being where the Pile Ford Road runs into the Ramsey property. The testimony was not clear as to the time periods when these gates existed and their locations.

-14-

It is unclear where and how long the gates were erected on the road at issue. As pointed out by the circuit court, these gates were primarily intended to facilitate the movement of cattle. It does not appear they were intended to keep anyone off the road. Additionally, Ivan N. Bennett, Jr. and his mother Darlene Bennett both testified there were never any gates preventing them from accessing the road.

Given that any gates on the road were primarily for farm purposes, we do not believe it undermines the circuit court's conclusion that Ivan N. Bennett, Jr.'s use of the road was not permissive. Accordingly, we conclude substantial evidence supports the circuit court's finding that use of the road had been hostile since 1940 by Ivan N. Bennett, Jr.'s predecessor in title, Owen Bennett.

**The circuit court properly determined the use and location of the prescriptive easement.**

"[A]n easement must be 'defined in conformity with the nature of its use.'" *Ellington*, 534 S.W.3d at 801 (citing *Lyle v. Holman*, 238 S.W.2d 157, 160 (Ky. 1951)). "An easement created through prescriptive use is limited to the use during the prescriptive period" and "will not ripen into a greater estate after the period of limitation has passed." *Id.*

Ramsey asserts the circuit court improperly expanded the easement beyond its adverse use in three ways. First, she argues the circuit court improperly expanded the easement by granting the appellees the ability to rock or gravel the

-15-

road from the "Tate House" south to its beginning.[8] She contends that the evidence presented before the court established that neither the Keesees or Ivan N. Bennett, Jr., have ever rocked or graveled the road and, therefore, it was not part of their adverse use.

We agree that maintenance of the road was not a part of the appellees' adverse use. However, the circuit court found that some of the road would wash out and leave ruts during bad weather, making it impassable. Kentucky courts allow an adverse possessor to maintain and improve an easement so long as such repairs do not inflict unnecessary injury on the servient estate. *Elam v. Elam*, 322 S.W.2d 703, 706 (Ky. 1959); *Spalding v. Louisville & N.R. Co.*, 281 Ky. 357, 136 S.W.2d 1, 3 (1940). Maintaining the roadbed will not injure Ramsey's land.

Ramsey next argues the circuit court erred by concluding the easement was thirty feet in width. The circuit court found, in relation to this issue:

> [Ramsey's] husband, who had inherited the property from his father, in a joint effort with neighbors including Plaintiffs Keesees constructed fences indicating there was a thirty (30) foot wide strip of ground that was open except for temporary closures for moving live stock.
>
> There was testimony that the road bed measures ten to twelve (10-12) feet in width. The Court accepts that number but that pertains only to the "road bed." The prescriptive easement pertains to a wider strip that enables

---

[8] This argument arises from the circuit court's September 11, 2019 Findings of Fact, Conclusions of Law, and Judgment pursuant to Ramsey's CR 59.05 motion to clarify the location and permitted uses of the easement.

road beds to be properly ditched and maintained for drainage and other reasons. The use of the road has been used as ingress and egress to the property owned by the Plaintiffs by motor vehicles, tractors, farm equipment, on foot and all-terrain vehicles to enable the Plaintiffs to use their property for agricultural and recreational purposes.

Accordingly, the circuit court concluded "[t]he road bed shall be twelve (12) feet wide and the easement containing the road bed thirty (30) feet wide."[9]

Ramsey contends that the appellees only used the roadbed, which is approximately ten to twelve feet wide and, therefore, any easement should be limited to that width. We disagree. It is uncontested that the strip of land containing the road bed was fenced on both sides by Donald Keesee and Ramsey's husband, approximating thirty feet in width. Accordingly, we cannot say that substantial evidence does not support the circuit court's conclusion.

Ramsey next asserts the circuit court erred by ordering her to remove the gate she erected to keep the appellees off the road. Specifically, she contends throughout the period of adverse use, there had been multiple gates erected on the road and, therefore, she should be able to maintain said gate. Effectively, Ramsey is seeking this Court's authority allowing her to maintain a gate that interferes with the appellees' reasonable use and enjoyment of the easement. That would

_____

[9] A barn was erected on Ramsey's property in 1983, which may encroach upon the easement. The circuit court concluded that if it did, "the easement shall be moved however many feet necessary to avoid relocating the barn."

contradict the circuit court's decision, and we decline to so hold. Because the gate interferes unreasonably with the appellees' rights as owners of the dominant estate, it must be removed.

***The easement over the northern section of the road was not abandoned.***

Last, Ramsey argues that any easement over the road north of the "Tate House" was abandoned.[10] She contends that the parties' non-use of this portion of the road, coupled with the fact that it had grown up to such degree that it was not passable, was sufficient to evidence abandonment of the easement. We disagree.

In Kentucky, easements are not abandoned simply by non-use. "[A]uthorities take pains to mark the distinction between mere non-user, with nothing more, and non-user attended by circumstances showing clearly the intention of abandonment of the easement." *City of Harrodsburg v. Cunningham*, 299 Ky. 193, 196, 184 S.W.2d 357, 359 (1944). "[A]n easement acquired by prescription may be extinguished by a nonuser under circumstances indicating an intention of abandonment whenever such nonuser has extended over that period of time sufficient to have created the prescriptive right at its origin." *Ellington*, 534 S.W.3d at 801 (quoting *Jones v. Dunn*, 305 Ky. 562, 205 S.W.2d 156, 157 (1947)).

---

[10] Ramsey raised this argument in her proposed findings of Fact, Conclusions of Law, and Judgment. However, the circuit court did not address this argument in its order.

Because the prescriptive period here is fifteen years, "non-use of the easement could only establish an intent to abandon after *fifteen years* of non-use." *Id.* (emphasis added). Substantial evidence does not support such a conclusion.

We acknowledge that the road north of the "Tate House" is overgrown with trees and vegetation. However, as noted above, Donald Keesee testified he used this section of the road "maybe once every two weeks." Additionally, the fact that the road has fallen into disrepair, alone, is insufficient to constitute abandonment. *Chitwood v. Whitlow*, 313 Ky. 182, 184, 230 S.W.2d 641, 642 (1950). Accordingly, we find no abandonment.

## CONCLUSION

Based on the foregoing, we affirm the November 20, 2018 and September 11, 2019 Judgments of the Breckinridge Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Dustin C. Humphrey
Radcliff, Kentucky

BRIEF FOR APPELLEES:

Donald W. Cottrell
Leitchfield, Kentucky